Filed 7/29/13  In re X.V. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re X.V., a Person Coming Under the Juvenile Court Law. | H038701 (Santa Clara County  Super. Ct. No. JV37607) |
| THE PEOPLE,  Plaintiff and Respondent,  v.  X.V.,  Defendant and Appellant. | |

In April 2012, a petition was filed alleging that X.V., a minor (17 years old at the time of the petition's filing), came within the provisions of Welfare and Institutions Code section 602.  (The minor was already a ward of the court.)  The petition charged the minor with felony possession of a dirk or dagger and misdemeanor resisting a peace officer.  The charges arose out of an incident in which the minor was congregating near school with several other young people who were believed to be students; one of them appeared to be smoking marijuana from a pipe.  After police detained the minor and the other young people, a pat search of the minor resulted in the police finding a folding knife concealed on his person.  The minor filed a motion to suppress this evidence under Welfare and Institutions Code section 700.1, which was denied.  After the minor admitted the two charges alleged, the court sustained the petition and adjudged the minor to

continue to be a ward of the court. He was ordered to remain in the custody of his parent under the same conditions of probation previously imposed.

The minor claims that the court erred in denying his suppression motion. He argues that the officer did not have sufficient objective facts to support a reasonable suspicion justifying his detention. He also challenges the pat search conducted after he was detained. He contends further that because the folding knife did not constitute a "dirk or dagger" under Penal Code section 21310,[1] there was no probable cause to take him into custody based upon an alleged violation of that statute, and his trial attorney was prejudicially ineffective in failing to assert this position below.

We conclude that the court erred in denying the suppression motion. Although we hold that the trial court correctly found the initial detention of the minor to have been proper, we determine that the officers' subsequent pat search was unlawful because there were insufficient facts to support a reasonable belief that the minor was armed and dangerous. At oral argument, the Attorney General conceded that the folding knife found in the minor's possession was not a "dirk or dagger," and that, therefore, the order should be reversed and the case remanded to allow the minor to withdraw his admission of that charge. We will accordingly reverse the dispositional order and remand the case for further proceedings.

### FACTS[2]

At approximately 8:30 in the morning on April 6, 2012, San José Police Officer Alfonso Hernandez and his partner, Officer P. Guerra, were patrolling on a golf cart near Foothill High School, a continuation high school on Pala Avenue in San José. Both were uniformed and armed resource officers acting "[m]ainly [as] campus police there at the

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The facts are taken from the testimony provided at the hearing on the minor's motion to suppress.

school." The officers were working in the neighborhood of the high school, "corralling the students" because the bell signaling the beginning of classes had rung. Some of the residents near the school, who recognize Foothill's students because of their black and white school uniforms, would on occasion call the school to advise of students "loitering, smoking tobacco and marijuana, and hanging out."

While the officers were patrolling approximately two blocks from the school, they observed five or six young people, one being the minor, standing in a circle near a recreational vehicle (RV). They were wearing baggy clothes. The minor was wearing jeans and a white T-shirt. Officer Hernandez believed the group to all be Foothill students because of their age and because they were wearing black and white.[3] He observed from a distance of about 20 to 25 yards that one of the students (not the minor) was holding and smoking a pipe. That student was known to Officer Hernandez as a person who had smoked marijuana in the past. Officer Hernandez believed that the pipe held by the student contained marijuana.[4] After the student with the pipe saw the officers, he turned, walked toward the RV, and spilled the contents of the pipe on the ground. The rest of the group also began to disperse.

When the five or six students started to disperse, the officers "detained them and told them to stay where they were." They had them stand against a fence, facing the officers. Each of the individuals complied. When Officer Hernandez walked over to the spot where the student with the pipe had emptied its contents, he confirmed that the pipe

[3] We will hereafter refer to this group as "students," although the record does not conclusively demonstrate that each of them was, in fact, a Foothill student. When we make specific reference to the minor in this appeal, X.V., we will refer to him as the minor to distinguish him from the rest of the students.

[4] Officer Hernandez testified that "with [his] training and [17 years of] experience, [he had never] see[n] anybody smoke tobacco out of a pipe."

had contained marijuana.  Officer Hernandez pat-searched the student with the pipe and instructed him to stand against the fence with the others.

Officer Guerra then pat-searched the minor.  Officer Hernandez, who was in close proximity, observed that the minor exhibited signs of having smoked marijuana—namely, bloodshot watery eyes, and a strong odor of marijuana.  Officer Guerra then pat-searched the minor's upper body.  Shortly thereafter, Officer Hernandez conducted a pat search of his lower body.  Because the minor had baggy pants, Officer Hernandez pulled them up as he was searching the waistband.  The minor was instructed to shake his pants leg, at which point a metal object fell onto the ground; the object was a folding knife.

Officer Hernandez testified that he and his partner pat-searched the pipe-smoking student, the minor, and the other students because "[o]fficer safety is paramount, and for weapons [*sic*]."  The officer further testified that the fact that the students were wearing baggy pants presented an increased need for the pat search.

PROCEDURAL BACKGROUND

On April 9, 2012, the Santa Clara County District Attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), with the juvenile court below.  In the petition, the People alleged that the minor had committed two offenses that if committed by an adult would be crimes, namely, possession of a dirk or dagger, a felony (§ 21310; count 1); and resisting, delaying or obstructing a peace officer, a misdemeanor (§ 148, subd. (a)(1); count 2).

The minor thereafter filed a motion to suppress evidence pursuant to Welfare and Institutions Code section 700.1, arguing that the property seized and the statements obtained from the minor should be suppressed because they were products of an unlawful search and seizure.  The motion was opposed orally by the People.  After the presentation of evidence and argument on June 11, 2012, and after the submission of a further brief on

behalf of the minor and a brief by the People, the court denied the minor's suppression motion.[5]

Following the denial of the suppression motion, the minor admitted the allegations of counts 1 and 2 of the petition. The court sustained the petition, and adjudged the minor to continue to be a ward of the court. He was ordered to remain in the custody of his parent on the same terms and conditions of probation that had been previously imposed. The minor filed a timely notice of appeal.

DISCUSSION

I.    *Motion to Suppress*

A.    *Standard of Review*

"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is

---

[5] The minor's counsel wrote to the superior court clerk, seeking the inclusion of the People's opposition to the suppression motion as part of the appellate record. In response, the superior court clerk indicated that there was no endorsed-filed copy of the People's opposition in the record, but that the District Attorney's Office had faxed a copy of the brief that had been submitted to the court; it was attached to the Clerk's Certificate of November 19, 2012. Because the minor requested the inclusion of the People's brief in the record, and because the record reflects that the court below, in fact, considered it, we will deem the record augmented to include this unfiled brief that was submitted by the People on or about June 15, 2012.

however predominantly one of law, . . . is also subject to independent review." (*People v. Williams* (1988) 45 Cal.3d 1268, 1301; see also *People v. Ayala* (2000) 23 Cal.4th 225, 255.)

All presumptions favor the trial court's exercise of its power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences, " 'and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597, quoting *People v. Lawler* (1973) 9 Cal.3d 156, 160; see also *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.) Where there is no controversy concerning the underlying facts, our task is simplified: The only issue is whether that rule of law, as applied to the undisputed historical facts, was or was not violated. This is an issue for our independent review. (See *People v. Thompson* (2006) 38 Cal.4th 811, 818.)

> B.      *Whether Detention of Minor Was Lawful*

> 1.      *Detentions under the Fourth Amendment*

The legal basis upon which a peace officer may detain a citizen has been explained as follows: "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893, superseded on other grounds by Cal. Const., art. I, § 28.)[6] "The corollary to this rule, of course, is that an investigative stop or detention

---

[6] "Since the passage of Proposition 8 in 1982 (Cal. Const., art. I, § 28), the subjective belief of the citizen set out in *In re Tony C.*[, *supra*,] 21 Cal.3d 888, no longer applies in analyzing whether an encounter is a detention. [Citation.] Rather the federal standard of analyzing the objective facts of the incident controls. [Citation.]" (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, fn. 2, citing *In re Lance W.* (1985) 37 Cal.3d 873.)

predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith.  [Citation.]"  (*In re Tony C.*, *supra*, at p. 893, citing *Terry v. Ohio* (1968) 392 U.S. 1, 22.)

In determining the lawfulness of a temporary detention, courts look at the " 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  (*United States v. Arvizu* (2002) 534 U.S. 266, 273, quoting *United States v. Cortez* (1981) 449 U.S. 411, 417; see also *People v. Souza* (1994) 9 Cal.4th 224, 239.)  This standard of " 'reasonable suspicion' . . . [is one] less demanding than probable cause 'not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' "  (*People v. Souza,* at pp. 230-231, quoting *Alabama v. White* (1990) 496 U.S. 325, 330.)  The United States Supreme Court has noted, "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' [Citation.]"  (*United States v. Sokolow* (1989) 490 U.S. 1, 7-8, quoting *Illinois v. Gates* (1983) 462 U.S. 213, 232.)  A person is deemed to have " 'been "seized" within the meaning of the Fourth Amendment' [citation]  . . . 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' "  (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573, fn. omitted, quoting *United States v. Mendenhall* (1980) 446 U.S. 544, 554; see also *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791.)

### 2.    *Propriety of Detention*

The minor argues that the officers' initial detention of him was unlawful.  He contends that under the reasonable suspicion standard enunciated in *Tony C.*, officers may detain an individual only if they have a particularized and objective basis for concluding that *that individual* is suspected of criminal activity.  Here, the minor

contends, while the officers may have properly detained the student who was carrying and smoking the pipe they suspected of containing marijuana, there were no facts supporting *the minor's* detention.

It is clear that the detention of the students occurred immediately upon the officers instructing them to halt and line up against the fence. At that moment in time—which preceded Officer Hernandez's walking over to where one student had discarded the pipe's contents—the officers saw that one student (not the minor) had been smoking marijuana. Upon seeing the officers, that person began walking away and emptied the contents of the pipe, and at the same time, the remaining students also began to disperse.

These facts were sufficient to support a reasonable suspicion that *the pipe-smoker* was involved in illegal activity. But more importantly, the following additional facts gave the officers reasonable grounds to suspect illegal activity involving *each of the students, including the minor*, sufficient to briefly detain them: the other students, who were apparently all Foothill students, had congregated together with the pipe-smoker at the time school commenced (and were not together at the same place without any connection to each other, such as persons waiting at a bus stop); and they dispersed (along with the pipe-smoker) upon the officers' arrival. (See *United States v. Garcia* (10th Cir. 2006) 459 F.3d 1059, 1066 [officers could reasonably suspect everyone present in the front room (where drugs were found) of apartment which was suspected site of several drug transactions was involved in suspected drug transactions]; *State v. Vorburger* (Wis. 2002) 648 N.W.2d 829 [where motel room smelled strongly of marijuana and person who rented it was about to enter room with two companions, there was reasonable suspicion to detain all three people]; but see *State v. Joyce* (N.H. 2009) 986 A.2d 642, 648-649 [where car passenger smelled of fresh marijuana but officers did not smell marijuana emanating from car or its driver, no reasonable suspicion to detain driver].) And that marijuana is often shared in groups is an additional fact upon which the officers could have relied in forming a reasonable suspicion of illegal activity

justifying their brief detention of the entire group. (See *In re Antonio B.* (2008) 166 Cal.App.4th 435, 439 (*Antonio B.*) [officer detained juvenile walking with companion who was smoking marijuana, based on officer's experience that "marijuana tends to be a communal drug"].)

We therefore conclude that the detention of the minor was lawful.[7]

### C. *Whether Pat Search Was Lawful*

#### 1. *Legal Principles*

In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the United States Supreme Court, acknowledging that pat searches for weapons constitute a "serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment" (*id.* at p. 17), held that a pat search is justified only when the officer reasonably believes, based on the totality of the circumstances, that the particular person he or she is questioning or detaining is armed and dangerous. (*Id.* at pp. 24, 27.) A *Terry* frisk "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." (*Id.* at p. 17, fn. omitted.) A pat search is a limited one conducted only to determine the presence of weapons. (*People v. Lawler* (1973) 9 Cal.3d 156, 161; see also *People v. Garcia* (2006)

---

[7] The court below relied on *Antonio B.*, *supra*, 166 Cal.App.4th 435 in support of its conclusion that the detention was constitutionally justified. In *Antonio B.*, officers placed the appellant in handcuffs after observing his companion with whom he was walking smoking marijuana. (*Id.* at p. 439.) Although the court ultimately concluded that the suppression motion should have been granted because the appellant's handcuffing constituted an arrest without probable cause (*id.* at p. 442), it noted that there was no dispute that the officers were justified in detaining the appellant based upon their observation of him walking with another teenager who was smoking marijuana and their belief that the appellant was also smoking marijuana. (*Id.* at pp. 441-442.) The minor correctly argues that *Antonio B.*'s implicit approval of the appellant's detention was dictum, since the case was decided on whether the officers' conduct constituted an unlawful arrest. We nonetheless conclude that on the record presented here, there were facts supporting a reasonable suspicion that the minor was engaged in unlawful activity warranting his detention.

145 Cal.App.4th 782, 788 [pat search for identification impermissible].) Although an officer need not have probable cause to arrest before conducting a pat search (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373), he or she must have a reasonable suspicion, based on objective facts known to him or her at the commencement of the search, that the particular individual is armed. (*People v. Medina* (2003) 110 Cal.App.4th 171, 177 (*Medina*).) A subject's refusal to consent to a search, without more, cannot serve as a basis for a pat search of the individual to determine whether he or she is carrying weapons. (*In re H.H.* (2009) 174 Cal.App.4th 653, 658.)

Thus, for instance, in *Ybarra v. Illinois* (1979) 444 U.S. 85 (*Ybarra*), the police entered a bar with a search warrant to search the bartender for narcotics. In executing the warrant, they conducted a weapon search of everyone in the bar. The police pat-searched the defendant and found six packets of heroin in his pants pocket. (*Id.* at p. 89.) The police officer claimed his actions were justified because the defendant was wearing a three-quarter length lumber jacket. (*Id.* at p. 93.) The Supreme Court rejected this justification, noting that this type of clothing might be expected on almost any bar patron in Illinois in early March. (*Ibid.*) The court observed that the defendant's hands were empty, he gave no indication that he possessed a weapon, made no gestures or other actions indicative of intent to commit an assault, and did not act in a threatening manner. (*Ibid.*) The court concluded that the police failed to articulate any specific fact justifying a pat search of the defendant. It noted that "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." (*Id.* at pp. 93-94; see also *Medina*, *supra*, 110 Cal.App.4th at p. 177 [pat search after traffic stop for minor infraction, even though late at night in high crime area,

unjustified, "since minor traffic offenses do not reasonably suggest the presence of weapons"].)

> 2. *Whether Pat Search Was Legally Justified*

The minor challenges the officers' justification for the pat search initiated after he was detained. He contends that there was no showing from Officer Hernandez's testimony that the officers had a reasonable belief that the minor was armed and dangerous. Citing *Ybarra*, *supra*, 444 U.S. 85, the minor argues that the fact that he was wearing baggy jeans, of itself, was insufficient to justify the pat search and there were no other facts suggesting the possible presence of a weapon. He asserts, therefore, that the motion to suppress on this basis was improperly denied.

In addition to *Ybarra*, the minor cites *People v. Adam* (1969) 1 Cal.App.3d 486 (*Adam*). In *Adam*, after the defendant looked in his rearview mirror several times while being followed by the police and after he swerved several times without crossing the center line, police performed a traffic stop. (*Id.* at p. 487.) The defendant's pupils were dilated and his speech was slurred but the officers did not smell alcohol. (*Id.* at pp. 487-488.) After having the defendant step out of his car, the officers observed that the "defendant 'closely fit the description of the burglary suspect' " and pat-searched him for weapons, finding marijuana in his shirt pocket. (*Id.* at p. 488.) The court held that the pat search was invalid under *Terry*, *supra*, 392 U.S. 1. Writing for the court, Justice Kaus reasoned: "The record does not contain one single fact from which, by the application of an objective standard, it could be concluded that the officer reasonably thought he was in danger. Even if we interpret his statement that he was looking for weapons as implying that he did so because he thought that this particular confrontation posed personal danger, rather than that he did so because it was routine procedure, there are no 'specific and articulable facts,' from which a court can infer that his fear was rational. We have a daylight encounter, between a young man, possibly under the influence of something, alone and apparently cooperative, with two police officers who were presumably armed.

If, on these bare facts, the police can undertake the 'serious intrusion upon the sanctity of a person' whose activities they have decided to investigate, the safeguards written into *Terry* are meaningless." (*Adam*, at p. 492.)

Here, Officer Hernandez testified that none of the students threatened either officer. None of them made any furtive movements when they were detained against the fence. And none of the members of the group claimed to have any weapons. Furthermore, Officer Hernandez testified that the minor had no bulges under his clothing; was not holding anything in his hands; and obeyed the officers' commands. In short, as Officer Hernandez testified, he did not "suspect [the minor] of any particular violent crime or anything else."

Officer Hernandez testified that he pat-searched the students because "[o]fficer safety is paramount." He explained that the fact that the students were wearing baggy pants heightened the need to conduct the pat searches. He also explained that when there are two officers and a group of individuals of the size presented in this instance,[8] his "routine" is to perform a pat search, especially where there is baggy clothing. (Cf. *Medina*, *supra*, 110 Cal.App.4th at p. 177 [rejecting pat search justification that it was " 'standard procedure' to conduct weapons searches in a high gang area late at night"])

Based upon the record here, the fact that the minor wore baggy clothing—similar to the defendant in *Ybarra* who wore a three-quarter length lumber jacket (*Ybarra*, *supra*, 444 U.S. at p. 93)—did not furnish a basis for reasonably suspecting him of being armed and dangerous. And—analogous to *Adam*, where the officers were involved in a daytime encounter with a person possibly under the influence but who was cooperative (*Adam*, *supra*, 1 Cal.App.3d at p. 492)—Officer Hernandez's observation that the minor

---

[8] The question posed by the Assistant District Attorney to Officer Hernandez actually referred to instances in which "there is a group of individuals of that size, four, five, six, individuals and there's [*sic*] just two officers . . ."

exhibited signs of marijuana use did not justify pat-searching the minor.  The existence of illegal activity—even coupled with the minor's baggy clothing, his association with the pipe-smoker, and the presence of objective signs of the minor's marijuana use—were insufficient to justify pat-searching the minor.

Furthermore, from an "officer safety" standpoint, although the officers were outnumbered, there was no evidence that any of the students was being uncooperative, let alone threatening.  (See *People v. Dickey* (1994) 21 Cal.App.4th 952, 956 [pat search, where one officer stopped two males in car, not justified by officer's generalized concern that the defendant " 'potentially may have been armed,' " where the defendant was unable to produce car registration, refused consent for officer to search car, was nervous and sweating, but was not aggressive].)  The only illegal behavior was the use of marijuana and the pipe-smoker's possession of marijuana, the latter conduct apparently in this instance being an infraction.  (See Health & Saf. Code, § 11357, subd. (b) [possession of not more than 28.5 grams of marijuana punishable as infraction].)[9]  And, unlike in *Medina*, *supra*, 110 Cal.App.4th at page 177—a case in which the court found the late-night pat search in a high-crime area to be unlawful—the detention here occurred during daylight, and there is no evidence that the officers were in a high crime area, or that there were other circumstances justifying the pat search.  (Cf. *People v. Limon* (1993) 17 Cal.App.4th 524, 535 [pat search justified where officer witnesses hand-to-hand exchange in area noted for presence of drugs and weapons, and propensity of drug dealers to possess weapons].)

The minor also cites *People v. Aviles* (1971) 21 Cal.App.3d 230.  There, the defendant, a passenger in a car that officers had asked to stop at 10:30 p.m. due to a headlight misalignment, appeared to be " 'hiding something . . . or doing something with

---

[9] The record does not disclose the precise amount of marijuana Officer Hernandez discovered on the ground after the student discarded it from the pipe.

his left hand.' " (*Id.* at pp. 231-232.) After one of the officers asked the defendant to present his left hand and he did not comply, the officer requested that he step out of the car. (*Id.* at p. 232.) After the minor complied, he eventually presented his left hand and the officer observed that he had nothing in it. (*Ibid.*) The officer then pat-searched him and found a baggie of marijuana. (*Ibid.*) The appellate court concluded that the pat search was improper because the officer had no reasonable grounds to believe the defendant was armed and dangerous. (*Id.* at p. 233.) Here, there were arguably fewer facts than in *Aviles* supporting the pat search, since the encounter was during the day and the minor was at all times cooperative and made no furtive gestures.

The trial court cited *People v. Collier* (2008) 166 Cal.App.4th 1374 (*Collier*) in support of its conclusion that the pat search was justified.[10] There, after a traffic stop that was based upon the absence of a front license plate, one officer who was speaking to the driver smelled marijuana coming from the car, while another officer smelled a strong marijuana odor from the passenger side where the defendant was seated. (*Id.* at p. 1376.) After the defendant—who was wearing baggy clothing and was taller than the officer speaking with him—complied with the officer's request to exit the car and responded "no" to the officer's question of whether he had a weapon or anything illegal, the officer pat-searched him and found a loaded handgun. (*Id.* at pp. 1376-1377.) The court held that the pat search was appropriate based upon (1) the officers' having probable cause to search the car's interior for drugs; (2) the officers' having a reasonable suspicion that the defendant might be possessing and transporting drugs; and (3) the officer's concern for his safety based upon the defendant's size, baggy clothing, and the fact that he or the driver may have been smoking marijuana. (*Id.* at pp. 1377-1378.) The court relied in part on a federal court's statement that " 'guns often accompany drugs' " in justifying a

---

[10] Although the District Attorney cited *Collier* below, the case is not cited or discussed in the respondent's brief.

pat search for weapons after a lawful traffic stop discloses a reasonable suspicion of the presence of illegal drugs in a vehicle. (*Id.* at p. 1378, quoting *United States v. Sakyi* (4th Cir. 1998) 160 F.3d 164, 169 (*Sakyi*).)

*Collier* is distinguishable. Here, there was no traffic stop or pat search conducted in conjunction with a search of a vehicle believed to be involved in the transportation of illegal drugs. These facts are significant in distinguishing *Collier.* As the court in *Sakyi* observed, "every traffic stop poses a meaningful level of risk to the safety of police officers." (*Sakyi, supra,* 160 F.3d at p. 168.) Nor is there evidence that the minor was larger than the officers or that the officers felt threatened in any manner by him. And as the court in *Collier* noted, its "opinion should not be read as allowing the police carte blanche to pat down anyone wearing baggy clothing." (*Collier, supra,* 166 Cal.App.4th 1377, fn. 1.) The holding in *Collier* does not support the trial court's conclusion that the pat search here was constitutionally justified.

The Attorney General cites *New Jersey v. T.L.O.* (1985) 469 U.S. 325 (*T.L.O.*) in support of her position that the pat search of the minor was proper. In *T.L.O.*, the Supreme Court recognized an exception to the warrant and probable cause requirement for searches conducted by public school officials. The court noted that "[m]aintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems." (*Id.* at p. 339.) The court found that "the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." (*Id.* at p. 341.) A search of a student would be " 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence

that the student has violated or is violating either the law or the rules of school." (*Id*. at p. 342, fns. omitted; see also *In re William G.* (1985) 40 Cal.3d 550, 564 ["searches of students by public school officials must be based on a reasonable suspicion that the student or students to be searched have engaged, or are engaging, in a proscribed activity (that is, a violation of a school rule or regulation, or a criminal statute)"].)

The Attorney General's reliance on *T.L.O.* is misplaced. This case does not involve a search of a student on school grounds. Rather, it is undisputed that the encounter between the two officers and the five or six people believed to be students occurred approximately two blocks from the high school. The Attorney General has cited no case, and we are aware of none, in which the principles of *T.L.O.* have been applied to an off-campus encounter between police and students.[11] Moreover, there was no evidence that the pat search by the officers here was conducted to discover evidence that the minor was engaged in proscribed activity; rather, the only reason for the search was an expressed concern for officer safety.

In concluding that the pat search of the minor here exceeded constitutional boundaries, we are mindful of the admonition provided by the Second District Court of Appeal in *People v. Dickey*, *supra*, 21 Cal.App.4th at page 957: "The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of

---

[11] In one case, the Ninth Circuit Court of Appeals held that *T.L.O.* did not apply to an off-campus search of a student by police. (See *United States v. Donnelly* (9th Cir. 2001) 6 Fed.Appx. 618, 620, fn. 2.) The circumstances presented here are, of course, to be distinguished from instances in which students are off-campus but participating in a school-sponsored event such as a field trip. Under those circumstances, several federal courts have held that the principles of *T.L.O.* apply. (See, e.g., *Webb v. McCullough* (6th Cir. 1987) 828 F.2d 1151, 1156 [search of student's hotel room during school band trip]; *Shade v. City of Farmington, Minnesota* (8th Cir. 2002) 309 F.3d 1054,1061-1062 [search of student during class held off campus]; *Rhodes v. Guarricino* (S.D.N.Y. 1999) 54 F.Supp.2d 186, 191 [search of student's hotel room during class trip].)

competing Fourth Amendment considerations. [Citations.] However, the *Terry* rule has been extant for over a quarter of a century and is well known to the police. [Citation.] It is alive and well. [Citation.]"

There were insufficient facts from which a finding could be made that there were reasonable grounds to believe the minor was armed and dangerous. Therefore, the pat search in this instance was not constitutionally justified and the motion to suppress should have been granted.[12] Since the folded knife was discovered as a result of the officers' unlawful pat search, this "physical, tangible material[] obtained either during or as a direct result of an unlawful invasion" should have been suppressed. (*Wong Sun v. United States* (1963) 371 U.S. 471, 485.)

The Attorney General conceded at oral argument that the folding knife was not a "dirk or dagger." She stated that in the interests of justice, the order should be reversed and the case remanded to allow the minor to withdraw his admission of that charge, and that the charge should thereafter be dismissed. Counsel for the minor accepted this concession but requested that this court nonetheless find that the detention and subsequent pat search of the minor was unlawful.

We accept the Attorney General's concession. (See §§ 16470, 21310; see also *In re Luke W.* (2001) 88 Cal.App.4th 650 [holding that possession of folding pocketknife did not constitute possession of concealed dirk or dagger under former § 12020].) Accordingly, we will reverse the order with instructions to permit the minor to withdraw his admission of the allegation in count 1 of the petition.[13]

---

[12] Because we have concluded that the suppression motion should have been granted based upon the unlawful pat search, we need not consider the minor's additional claims of error, including his claim that the pat search exceeded the scope of a lawful pat search. (See *People v. Roldan* (2012) 205 Cal.App.4th 969, 985, fn. 4.)

[13] The petition contained a second count—resisting, delaying or obstructing a peace officer (§ 148, subd. (a)(1); count 2)—which was also admitted by the minor. The Attorney General at oral argument stated that this allegation had been dismissed below,

## DISPOSITION

The dispositional order is reversed, and the matter is remanded with instructions to permit the minor to withdraw his admissions of the allegations of the petition. Upon such withdrawal, the court is directed to vacate its order denying the motion to suppress, to enter an order granting suppression of the seized folded knife, and to dismiss the allegations of count 1.

_____
Márquez, J.

WE CONCUR:

_____
Elia, Acting P.J.

_____
Bamattre-Manoukian, J.

_____

but the record does not support this assertion. Because we conclude that the suppression motion should have been granted and there is an apparent connection between the pat search and the circumstances surrounding count 2 the court, on remand, shall allow the minor to withdraw his admission of that count. In light of the Attorney General's concession that the folding knife in the minor's possession did not constitute a "dirk or dagger" within the meaning of section 21310, count 2 may ultimately require dismissal. (See, e.g., *People v. Wilkins* (1993) 14 Cal.App.4th 761, 776 [element of violation of § 148 is that officer was engaged in lawful performance of duties at time of the offense; where offense occurs upon an officer effecting arrest, arrest must be lawful].) But because the propriety of count 2 was not raised on appeal, we do not reach the merits of that matter. Instead, we remand to the trial court for further proceedings.