Filed 11/6/20  P. v. Long CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LAMAR LEE LONG,<br><br>     Defendant and Appellant. | D075427<br><br><br>(Super. Ct. No. SCD277018) |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Affirmed.

Cherise Bacalski, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor, and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Lamar Lee Long was a passenger in a vehicle that the police pulled over for failing to stop at a stop sign.  An officer asked Long to exit the vehicle, performed a weapons patdown search, and located a baggie

containing approximately seven grams of cocaine base in Long's waistband. Long filed a motion to suppress the cocaine evidence pursuant to Penal Code section 1538.5 and argued the patdown was unreasonable and in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

The trial court denied the motion and Long entered a negotiated guilty plea to one count of transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and one count of possession of cocaine base for sale (*id.*, § 11351.5). Long appeals from the final judgment and asserts the trial court erred by denying his motion to suppress. We find no error in the trial court's ruling and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2018, two gang members were shot to death in broad daylight at a park in San Diego. Over the next two weeks, there were several retaliatory shootings involving known gang members, and at least one related homicide. During the same two-week period, the San Diego Police arrested six known gang members in the area surrounding the park, each of whom was carrying a firearm at the time of arrest.

On May 21, 2018, gang members held a vigil and celebration of life at the park where the original double homicide occurred. Because such events often attracted a large number of gang members, and created a target for rival gangs, a gang suppression team of the San Diego Police monitored the event.

Long was a known gang member and was seen entering and leaving the park that day. At approximately 2:15 p.m., Long was riding as a passenger in a vehicle driven by Arthur F., approximately two blocks from

2

the park.  The vehicle ran through a stop sign without stopping and San Diego Police Officers Cameron and Brou initiated a traffic stop.

A records check revealed Arthur was subject to a Fourth Amendment waiver search condition that included his person and vehicle and Long was a narcotics registrant.  The officers decided to do a Fourth Amendment waiver compliance check on Arthur and the vehicle.  Officer Brou asked Arthur to step out of the vehicle and conducted a patdown search for weapons.  Officer Cameron then asked Long to exit the vehicle and patted him down for weapons as well.  Officer Cameron felt a large golf-ball-size, crunchy object protruding in the front waistband of Long's underwear, just above his belt. The substance was later identified as cocaine base.

Long was charged with one count of transportation of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and one count of possession of cocaine base for sale (*id.*, § 11351.5).  Long filed a motion to suppress the evidence seized by the San Diego police, including the cocaine base, on the ground the search was unreasonable and in violation of his rights under the Fourth and Fourteenth Amendments.

Officer Cameron testified at the trial court hearing on the suppression motion.  He stated that he had contacted Long in the past and knew that Long was a gang member.  Officer Cameron believed Long had a history of assault and violence, and Officer Cameron explained that he was "part of multiple search warrants, where SWAT has been used to execute the search warrants on [Long's] residence."  Officer Cameron further testified Long was wearing skinny jeans and a jacket that was baggy enough to conceal his waistband at the time of the stop.  Counsel indicated Long was wearing the same clothing in court and Officer Cameron agreed the jacket was the same or similar to the one Long wore at the time of the stop.

Officer Cameron stated he conducted the patdown based on a concern Long was armed and dangerous. When asked his reasoning, he explained:

> "For, one, just knowing Mr. Long is a known gang member with Lincoln Park Piru. I know of his assaultive history. And then furthermore, the recent gang activity in and around that park and the members leaving that park, in the vicinity of that park, there have been several traffic stops our unit has made where people have been armed and several firearms have been recovered. So, yes, I was concerned for my safety, that Mr. [Long] would be armed."

Considering the totality of circumstances, the trial court concluded it was reasonable for Officer Cameron to conduct the patdown search of Long for weapons and denied the motion to suppress. Thereafter, Long entered a guilty plea and was sentenced to six years in prison. Long now appeals.

DISCUSSION

Long's sole contention on appeal is that the trial court erred by denying his motion to suppress based on an unlawful patdown search.

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures and is applicable to states by virtue of the due process clause of the Fourteenth Amendment. (U.S. Const., 4th & 14th Amends.; *People v. Camacho* (2000) 23 Cal.4th 824, 829.)

When a police officer conducts a lawful investigatory stop of a vehicle and has a reasonable suspicion the driver or any passenger is armed and dangerous, the officer may conduct a patdown search for weapons without violating the Fourth or Fourteenth Amendments. (*Arizona v. Johnson* (2009) 555 U.S. 323, 326-327; *Terry v. Ohio* (1968) 392 U.S. 1, 24 (*Terry*); *People v. Medina* (2003) 110 Cal.App.4th 171, 176 (*Medina*).) This is often referred to as a "*Terry* frisk" or patdown. (*Medina*, at p. 176.) Although lawful under certain circumstances, a *Terry* frisk "is a serious intrusion upon the sanctity

4

of a person." (*Terry*, at p. 17.) Accordingly, it "is not justified unless the officer can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous." (*Medina*, at p. 176; see also *Terry*, at p. 21.) "The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957.) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, at p. 27.)

A defendant may move to suppress evidence obtained as a result of an unlawful or unjustified *Terry* frisk. (Pen. Code, § 1538.5.) When presented with a motion to suppress on these grounds, the trial court makes findings of fact regarding the circumstances surrounding the search and applies those findings to the law to determine whether the search was reasonable. (*People v. Parson* (2008) 44 Cal.4th 332, 345 (*Parson*).) On appeal, we review the factual findings underlying the trial court's ruling on the motion to suppress for substantial evidence and consider de novo whether the search was reasonable based on those facts. (*Parson*, at p. 345; *People v. Oldham* (2000) 81 Cal.App.4th 1, 9.) "[W]e view the record in the light most favorable to the challenged ruling." (*People v. Smith* (2010) 190 Cal.App.4th 572, 576.)

Here, Long concedes the traffic stop itself was proper but contends Officer Cameron did not articulate a sufficiently particularized and reasonable suspicion Long was armed and dangerous to justify the patdown search. We disagree and conclude Officer Cameron provided specific and

5

articulable facts, supported by sufficient evidence, giving rise to a reasonable suspicion that Long was armed, thus justifying the search for weapons. (See *Medina*, *supra*, 110 Cal.App.4th at p. 176.)

The evidence indicates Long was seen at a nearby park where a celebration of life and vigil were being held for a gang member prior to the traffic stop. The event was under surveillance specifically because the police had reason to believe it would draw a large number of gang members and could be a target of violent crimes involving rival gangs. Officer Cameron was aware of these facts, had knowledge Long was a gang member, and had at least some basis to believe Long had a violent past. Thus, Officer Cameron had reason to believe Long might be armed and dangerous at the time of the stop. (See *In re H.M.* (2008) 167 Cal.App.4th 136, 146-147 (*H.M.*) [officers may consider fact that area involves increased, recent, violent gang activity, along with other factors, when establishing reasonable suspicion an individual contacted in that area is armed and dangerous]; *People v. King* (1989) 216 Cal.App.3d 1237, 1241 ["[T]he fact that an area involves increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous. While this factor alone may not justify a weapon search, combined with additional factors it may."].)

Further, the officers had a valid reason to search the vehicle—the driver's Fourth Amendment waiver—and it was reasonable for them to ask Long to exit the vehicle to conduct that search. (*Maryland v. Wilson* (1997) 519 U.S. 408, 414-415.) Thereafter, Officer Cameron noted Long was wearing a jacket that was baggy enough to conceal a weapon underneath it. Based on the totality of circumstances, we agree with the trial court that it was reasonable for Officer Cameron to perform a patdown search to ensure Long did not have any weapons before searching the car. (See *People v. Collier*

6

(2008) 166 Cal.App.4th 1374, 1376, 1378 (*Collier*) [reasonable for deputy to conduct patdown of passenger before searching car interior where car smelled of marijuana and passenger was wearing baggy clothing capable of concealing a weapon].)

Long argues his jacket was only "somewhat baggy" and not sufficiently baggy to justify the search, noting the officer never testified that he saw a "bulge" under Long's clothing.  However, Long wore the jacket to the suppression hearing and the trial court concluded it was baggy enough that an officer would not be able to tell if it was concealing a weapon.  We defer to the trial court's express and implied factual findings where, as here, they are supported by substantial evidence.  (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.)  Combined with the totality of circumstances, the fact that Long's clothing was baggy enough to conceal a weapon was enough to justify a patdown search for officer safety.  (See *Collier*, *supra*, 166 Cal.App.4th at pp. 1376, 1378 & fn. 1.)  Although Officer Cameron did not see a bulge under the clothing, the officer does not need to be absolutely certain the defendant is armed.  (*Terry*, *supra*, 392 U.S. at p. 27.)  Under the circumstances, and based on Officer Cameron's knowledge and experience, it was prudent to first determine if Long was carrying a concealed weapon before the officers completed the vehicle search.  (See *ibid*. ["in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience"].)

Long relies on *Medina*, *supra*, 110 Cal.App.4th 171, and *People v. Hester* (2004) 119 Cal.App.4th 376, 386 (*Hester*), but these cases do not support his assertion that the search was invalid.

In *Medina*, the officers stopped the defendant for a broken taillight. (*Medina*, *supra*, 110 Cal.App.4th at p. 174.) There was no evidence to suggest the defendant did anything to indicate he was involved in criminal activity or that he was subject to a Fourth Amendment search waiver. (*Ibid*.) An officer asked the defendant to exit the vehicle, "grabbed" his hands, and asked him if he had "any weapons, sharp objects, 'or anything he should know of prior to the search.' " (*Id*. at p. 175.) The defendant admitted to having a "rock" and the officer found rock cocaine in the defendant's pocket. (*Ibid*.) At the motion to suppress hearing, the arresting officer admitted there was nothing specific about the defendant that suggested he may be armed and explained it was "standard procedure" to conduct a weapons search in a "high gang area late at night." (*Id*. at p. 177.) On appeal, the court concluded that mere presence in a high crime area *alone* was not sufficient reason to justify a detention and weapons search, and therefore concluded both the detention and search were unlawful. (*Id*. at pp. 177-178.)

By contrast here, Officer Cameron did not rely solely on the general area in which Long was stopped to justify the search. Instead, he relied on specific recent events, including the celebration of life occurring on the day of the stop, and the fact that Long himself was seen leaving that event shortly before the stop. In addition, Long was a known gang member and Officer Cameron had reason to believe he had a violent past. These facts—prior contacts with law enforcement, status as a known gang member, a history involving violence or assaultive behavior, observation of the defendant departing from a suspicious location, and the fact that the defendant's jacket concealed his waistline—were all specific to Long rather than mere generalizations about the area where the search occurred. (See *H.M.*, *supra*, 167 Cal.App.4th at pp. 147-148 [concluding trial court did not err in denying

suppression motion where the suspicions of the officer "were aroused based on factors directly related to H.M., i.e., his suspicious behavior and his prior contacts with police."].)  Moreover, while the court in *Medina* questioned the officer's reasons for having the defendant exit the vehicle in the first instance, here the vehicle at issue was subject to a valid Fourth Amendment waiver. (See *Medina*, *supra*, 110 Cal.App.4th at p. 176.)

The search at issue in *Hester* also occurred after a traffic stop.  (*Hester*, *supra*, 119 Cal.App.4th at p. 384.)  However, unlike the present case, there was no traffic violation that precipitated the stop.  (*Ibid*.)  Instead, the officers in *Hester* observed three vehicles which they assumed were traveling together, and they pulled over the vehicle containing the defendant based on the fact that there had been a gang-related shooting in the area earlier that evening and one of the individuals in the car was a known gang member. (*Ibid*.)  The officer impermissibly inferred all four occupants of the vehicle were gang members because one individual in the car "was known to him to be an East Side Crip, the cars were driving in East Side Crips territory, and the [car] contained Black males between 15 and 25 years of age." (*Id.* at p. 388.)  The Court of Appeal determined this assumption was unreasonable because "[t]here [were] far too many other possible explanations that fit these facts to conclude that everyone in the cars was a gang member." (*Ibid*.) "Mere membership in a criminal street gang, without additional *facts* supporting an inference of criminal activity, does not permit a detention. (*Id.* at p. 392.)  The *Hester* court concluded the stop violated the Fourth Amendment rights of the occupants of the vehicle because the facts articulated by the officer were not sufficient to support a particularized and objective basis for suspecting anyone in the vehicle of criminal activity. (*Ibid*.)

9

Here, by contrast, there was an objective reason for the stop (a traffic violation), and the officer conducting the search had specific, particularized knowledge indicating Long was in fact a gang member with multiple police contacts (including SWAT team searches of his residence) and a violent history. As discussed, when considered along with the fact that Long was seen leaving the celebration of life not long before the stop, and the fact that Long's jacket concealed his waistline, Officer Cameron articulated a particularized reason to believe Long might be armed and dangerous. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124.) Nonetheless, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." (*Ibid.*; *King*, *supra*, 216 Cal.App.3d at p. 1241 ["the fact that an area involves increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous"].)

In sum, there were specific and articulable facts indicating that Long may be armed and dangerous. The officer did not rely solely on the fact that the detention and search occurred in a high crime area, but instead had individualized suspicion directed at the defendant himself. Because the patdown search was justified based on the totality of the circumstances, the trial court properly denied the suppression motion.

## DISPOSITION

The judgment is affirmed.

GUERRERO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

11