[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 173 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 174 
May officers, as a matter of standard procedure and in the name of "officer safety," detain and frisk a driver stopped for an equipment infraction solely on the basis that the stop occurs in a high crime area at night? Here we conclude that the Fourth Amendment does not permit such an intrusion and that any incriminating evidence flowing from the illegal contact, which may include statements made by the driver, is inadmissible.
Roman Medina appeals from the trial court's denial of his motion to suppress cocaine found on his person and in his vehicle, as well as statements he made to the police at the time of his detention and search. (Pen. Code, § 1538.5.) After the court denied his motion, Medina pleaded guilty to possession of a controlled substance. (Health Saf. Code, § 11350, subd. (a).) Entry of judgment was deferred, and Medina was placed on probation. He contends that the cocaine and the statements attributed to him were obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.[1] We agree and, accordingly, reverse.
 Facts and Procedural History
At approximately midnight on January 19, 2002, Los Angeles Police Officers Lopez and Arroyo stopped Medina's car near Olympic Boulevard and Alvarado Street in Los Angeles for driving with a broken taillight. Both officers testified at the suppression hearing that they could not recall the precise nature of the break, although Officer Lopez testified that some unspecified portion of the plastic cover was missing.
The officers activated their overhead lights and Medina promptly pulled over. He remained in his car until the officers approached and ordered him to *Page 175 
step out. After Medina promptly exited the car, he was ordered to place his hands behind his head, walk backwards toward the officers, and then face an adjacent wall. He complied without incident.
Officer Lopez testified that there "wasn't anything specific" about the 49-year-old Medina that led him to believe Medina was armed. Nevertheless, Officer Lopez decided to search him because he was in a "high-gang location." Lopez "grabbed" Medina's hands and asked if he had any weapons, sharp objects, "or anything he should know of prior to the search." Medina responded that he had a "rock" in his pants, which Lopez understood to mean rock cocaine. Lopez subsequently found rock cocaine in Medina's pocket. After Medina was arrested, another small amount of cocaine was found in his car.
Medina moved to suppress the cocaine taken from his pocket and his car, as well as the statements attributed to him by the police. The trial court denied the motion, reasoning as follows: "I think given the factors outlined by the officers . . ., including time of night, location, and the fact that it is a known gang and drug area, that additional steps short of arrest are permissible for officer safety and I think those were reasonably articulated here. [¶] I think I would be hard pressed to find that the officers acted unreasonabl[y]. Once the question was made . . . whether or not the defendant had anything sharp, or any weapons, or any needles and the defendant's spontaneous statement, I think at that point there was probable cause to arrest him."
 Standard of Review
"`"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] `The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review."' [Citation.]" (People v.Ayala (2000) 23 Cal.4th 225, 255.)
 Discussion
Medina contends that the incriminating evidence against him should have been suppressed because it was the fruit of an unlawful search and seizure. *Page 176 
The People respond that Medina's detention was reasonable, that he was not searched until after he revealed he had cocaine in his pocket, and that in any event the officers' actions were supported by reasonable suspicion.
First, we reject the People's claim that the search was prompted by Medina's admission. Officer Lopez testified that he set out to conduct a patdown pursuant to his "standard procedure," and his act of securing Medina's hands behind his head was part and parcel of that search. We also agree with Medina that his detention was rendered unlawful when Officer Lopez grabbed his hands, and that the ensuing search was also illegal because the officer failed to offer articulable facts demonstrating a reasonable suspicion that Medina was armed and dangerous. Indeed, the officer admitted there were no such facts. The only reason for restraining Medina's hands and searching him was the time and location of the stop. Apparently, anyone observed to be driving in that area at night with a citable equipment defect would be stopped and subjected to a patdown search. The Fourth Amendment plainly prohibits the police from employing such a procedure.
Medina was lawfully stopped for having a broken taillight. Such a violation requires the offender to fix the defect. (Veh. Code, §§24250, 24600, subd. (b), 40303.5, subd. (d).) But a traffic stop that is lawful at its inception may "`. . . exceed constitutional bounds when extended beyond what is reasonably necessary under the circumstances which made its initiation permissible.'" (People v.McGaughran (1979) 25 Cal.3d 577, 586.) If a traffic offender provides proper identification, "the officer must simply prepare a written notice to appear (i.e., a citation or `ticket') reciting the particulars of the violation (Veh. Code, § 40500, subd. (a)), and must release the offender when he signs a written promise to appear (id., § 40504, subd. (a))." (McGaughran, p. 583, fn. omitted.) Accordingly, a driver stopped for a minor traffic infraction cannot be physically restrained absent "`specific and articulable facts' that could support a rational suspicion that [the driver was] involved in `some activity relating to crime.' [Citation.]" (Id., at p. 591.)
If the officer reasonably believes the driver is armed and presently dangerous to the officer or to others, the officer is entitled to conduct a "Terry frisk" for weapons. (Terry v. Ohio (1968) 392 U.S. 1, 24.) ATerry frisk "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." (Id., at p. 17, fn. omitted.) Accordingly, a frisk for weapons is not justified unless the officer can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous. (Id., at p. 21; see also People v. Miranda (1993) 17 Cal.App.4th 917, *Page 177 
927 ["[S]ince minor traffic offenses do not reasonably suggest the presence of weapons, an officer may not search the driver . . . unless the objective circumstances furnish reasonable grounds to believe the driver is armed and/or dangerous and may gain immediate control of a weapon"].)
Officer Lopez conceded that there "wasn't anything specific" about Medina that would have led him to believe he was armed. Instead, he testified that it is "standard procedure" to conduct weapons searches in a high gang area late at night. Our Supreme Court has indicated, however, that the time and location of an encounter are insufficient by themselves to cast reasonable suspicion on an individual. The logic underlying this conclusion is manifest: "Strictly speaking, the `nighttime factor' is not `activity' by a citizen, and this court has warned that this factor `should be appraised with caution' [citation] and that it has, at most, `minimal importance' in evaluating the propriety of an intrusion [citation]." (People v. Bower (1979) 24 Cal.3d 638, 645, fn. omitted.) Similarly, "[t]he `high crime area' factor is not an `activity' of an individual. Many citizens of this state are forced to live in areas that have `high crime' rates or they come to these areas to shop, work, play, transact business, or visit relatives or friends. The spectrum of legitimate human behavior occurs every day in so-called high crime areas. As a result, this court has appraised this factor with caution and has been reluctant to conclude that a location's crime rate transforms otherwise innocent-appearing circumstances into circumstances justifying the seizure of an individual. [Citations.]" (Bower, p. 645; see also In re Tony C. (1978) 21 Cal.3d 888, 897.)
Accordingly, while "[a]n area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment," and "[t]he time of night is another pertinent factor in assessing the validity of a detention," "mere presence in a highcrime area is not, standing alone, `sufficient to justify interference with an otherwise innocent-appearing citizen. . . .' [Citation.]" (People v. Souza (1994) 9 Cal.4th 224, 240-241; see alsoIllinois v. Wardlow (2000) 528 U.S. 119, 124; Brown v. Texas (1979)443 U.S. 47, 52.) Although the Supreme Court's discussion on this subject addresses the propriety of Terry stops, the court's conclusions apply with equal force in determining the reasonableness of Terry frisks. (SeePeople v. Limon (1993) 17 Cal.App.4th 524, 534; People v. King (1989)216 Cal.App.3d 1237, 1241.)
The People contend that the time of day and location may in combination be sufficient by themselves to justify a Terry stop and frisk. None of the cases *Page 178 
cited supports that proposition. (See Illinois v. Wardlow,supra, 528 U.S. at p. 124 [defendant in high crime area at night fled from the police]; People v. Souza, supra, 9 Cal.4th at pp. 240-241
[same]; People v. Foranyic (1998) 64 Cal.App.4th 186, 189-190 [defendant was seen carrying an ax while riding a bicycle at 3:00 a.m.]; People v.Limon, supra, 17 Cal.App.4th at pp. 531-534 [defendant engaged in what appeared to be a hand-to-hand drug exchange]; People v. Mims (1992)9 Cal.App.4th 1244, 1248 [same]; In re Frank V. (1991) 233 Cal.App.3d 1232,1241 [minor wearing heavy coat started for his pockets after being told to take them out and keep them in the officer's sight].) Indeed, all but one of the cases expressly recognize that an individual's mere presence in a high-crime area is insufficient. (Wardlow, p. 124 Souza, pp. 240-241; Limon, p. 534; Mims, p. 1248; Frank V., p. 1241.) Because the decision to restrain Medina's hands and search him was based solely on his presence in a high-crime area late at night, both the detention and search were unlawful.
Having concluded that the search and seizure were unlawful, we must determine whether the evidence obtained against Medina is subject to suppression under the "fruit of the poisonous tree" doctrine. (See generally Wong Sun v. United States (1963) 371 U.S. 471, 484-488.) The People contend suppression is unnecessary because Medina gave a "spontaneous confession" that led to the discovery of the cocaine. (SeePeople v. Loudermilk (1987) 195 Cal.App.3d 996, 1002.)
To determine whether the evidence obtained against Medina must be excluded, we ask "`. . . "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."' [Citations.] The degree of attenuation that suffices to dissipate the taint `requires at least an intervening independent act by the defendant or a third party' to break the causal chain in such a way that the [incriminating evidence] is not in fact obtained by exploitation of the illegality. [Citations.]" (People v. Sims (1993) 5 Cal.4th 405, 445.) Under the circumstances, Medina's statement that he had cocaine in his pants cannot be deemed an intervening act that was sufficiently independent of the unlawful search and seizure. According to Officer Lopez's partner, Medina revealed that he had drugs in his possession in response to Officer Lopez's inquiry whether he had weapons or "anything he should know of prior to the search." Because the officer's question could reasonably be interpreted to mean that the search would not be limited to weapons, Medina cannot be faulted for revealing that which he believed would be inevitably discovered. Moreover, the question was asked and answered while Officer Lopez had Medina's hands secured *Page 179 
behind his head. Although individuals generally are under no obligation to answer questions posed to them during a routine traffic stop that are unrelated to the purpose of the stop (see People v. Brown (1998) 62 Cal.App.4th 493, 499), the elements of coercion present here prevent us from relying on that principle. Under the circumstances, Medina's admission cannot be deemed a spontaneous confession. (Cf. People v. Loudermilk, supra, 195 Cal.App.3d at p. 1002
[spontaneous confession after lawful seizure of defendant's wallet to determine identity was not the fruit of any unlawful search].) Rather, the admission was obtained through exploitation of the illegal search and seizure and must be suppressed, along with the other evidence flowing therefrom.
In reaching our conclusions in this case, we are mindful that "[t]he judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.] However, the Terry rule has been extant for over a quarter of a century and is well known to the police. [Citation.] It is alive and well. [Citation.]" (People v. Dickey (1994)21 Cal.App.4th 952, 957.)
The order granting probation is reversed. On remand, the trial court shall enter an order granting Medina's motion to suppress.
We concur:
GILBERT, P.J.
COFFEE, J.
[1] Entry of judgment was deferred pursuant to Penal Code section1000. Although no final judgment has been entered in this case, the order granting probation is appealable. (Pen. Code, § 1237, subd. (a); People v. Mower (2002) 28 Cal.4th 457, 466, fn. 3.) *Page 180