Filed 8/21/14  P. v. Wilson CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GRANT WILSON, JR.,<br><br>    Defendant and Appellant. | H040313<br>(Santa Clara County<br>Super. Ct. No. C1362290) |

## I.  INTRODUCTION

After his motion to suppress evidence was denied, defendant Grant Wilson, Jr., pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and possession of narcotics paraphernalia (Health & Saf. Code, § 11364.1), and he was placed on Proposition 36 probation for two years.  One of his probation conditions provided:  "You shall not possess or consume any alcohol or illegal drugs including marijuana, . . . nor shall you knowingly go to places where those items are being offered for sale or being consumed."

On appeal, defendant contends the trial court erred by denying his motion to suppress evidence, claiming he was subjected to an unlawful pat search.  Defendant also contends the probation condition concerning alcohol and drugs is unconstitutionally vague because it lacks an express knowledge requirement.  The Attorney General

concedes that an express knowledge requirement should be included in the probation condition. We will modify the probation condition and affirm the judgment as modified.

## II.    BACKGROUND

### A.    Defendant's Detention

On July 30, 2013, at about 3:25 a.m., San Jose Police Officer Joseph Carrott saw defendant in the area of First Street and Edwards Avenue, which is a high crime, commercial area with a lot of abandoned buildings.

Defendant was riding a bicycle without a forward-facing light, in violation of Vehicle Code section 21201, subdivision (d)(1).[1] Officer Carrott initiated a stop by using his patrol car's spotlight.

When stopped, defendant "appeared very nervous." "He began looking around behind him and [in] different directions up and down the street. And then he began crying." Based on defendant's behavior, Officer Carrott believed defendant was either "looking for a way to run or weighing his options of whether to run or fight [the officer]."

Officer Carrott was concerned for his safety, particularly because he was close to defendant and because defendant was "wearing very bulky clothing," which might have concealed a "weapon, knife, gun." Specifically, defendant was wearing two jackets and cargo pants.

Officer Carrott instructed defendant to "step away from his bicycle," and he performed a "pat-frisk search of him," looking for weapons. In defendant's pocket, Officer Carrott felt a methamphetamine pipe. After defendant admitted it was a

---

[1] Vehicle Code section 21201 (d) provides in pertinent part: "A bicycle operated during darkness upon a highway, a sidewalk where bicycle operation is not prohibited by the local jurisdiction, or a bikeway, as defined in Section 890.4 of the Streets and Highways Code, shall be equipped with all of the following: [¶] (1) A lamp emitting a white light that, while the bicycle is in motion, illuminates the highway, sidewalk, or bikeway in front of the bicyclist and is visible from a distance of 300 feet in front and from the sides of the bicycle."

methamphetamine pipe, Officer Carrott arrested him. Incident to the arrest, Officer Carrott further searched defendant and found a baggie containing a "crystalline substance." The substance later tested presumptive positive for methamphetamine.

After being arrested, defendant gave the name "Robert Wilson" when asked to identify himself, but his driver's license reflected that his true name was Grant Christopher Wilson II. Defendant also supplied a false date of birth.

### B. Charges, Suppression Motion, Pleas, and Sentence

Defendant was charged with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1), possession of narcotics paraphernalia (Health & Saf. Code, § 11364.1; count 2), and providing a false name to a peace officer (Pen. Code, § 148.9; count 3).

Defendant subsequently filed a motion to suppress evidence. (See Pen. Code, § 1538.5.) He alleged that he was detained and searched without a warrant, and that the prosecution was obligated to justify the warrantless detention and search. (See *People v. Williams* (1999) 20 Cal.4th 119, 130.) In response to defendant's motion to suppress, the prosecution argued that the detention was justified by defendant's violation of Vehicle Code section 21201, subdivision (d)(1) and that the pat search was justified by the officer's safety concerns.

The trial court heard and denied defendant's motion to suppress on October 9, 2013.

On October 16, 2013, defendant pleaded no contest to count 1 (possession of methamphetamine) and count 2 (possession of narcotics paraphernalia). Also on that date, the trial court placed defendant on Proposition 36 probation for two years. One of his probation conditions provided: "You shall not possess or consume any alcohol or illegal drugs including marijuana, . . . nor shall you knowingly go to places where those items are being offered for sale or being consumed."

## III.    DISCUSSION

### A.    *Denial of Motion to Suppress*

Defendant contends the trial court erred by denying his motion to suppress. He argues that Officer Carrott did not have a reasonable suspicion that defendant was armed and dangerous.

#### 1.    Proceedings Below

In denying defendant's motion to suppress, the trial court found that the pat search was justified. The trial court first noted that it "found the officer's testimony to be credible." The court found that defendant's behavior "went far beyond nervousness," explaining, "An officer confronted with a person who essentially immediately bursts into tears and is looking around in a nervous fashion, in a fight or flight, that's a – to me, a much more risky situation than simply a person who's acting nervous in response to being stopped by the police." The trial court listed all the factors supporting its ruling: "the time of night, alone – the officer was alone, the [defendant's] response, and the baggy clothing where a weapon could easily have been stored."

#### 2.    Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

#### 3.    Analysis

In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the United States Supreme Court held that the Constitution permits "a reasonable search for weapons for the protection of the police officer, where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual." (*Id.* at p. 27.) A pat search for weapons is justified if

4

"a reasonably prudent [officer] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." (*Ibid.*) "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the search. (*Id.* at p. 21.)

"The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety. The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations.]" (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 (*Dickey*).)

Below and on appeal, the parties cited and discussed a number of cases involving pat searches where the defendant exhibited nervousness and/or wore baggy clothing. Defendant contends that these two factors did not justify the search here. The Attorney General contends that the pat search was reasonable in light of "the totality of the circumstances."

Nervousness and signs of being under the influence did not justify a pat search for weapons during a daytime traffic stop in *People v. Adam* (1969) 1 Cal.App.3d 486 (*Adam*). In that case, two officers stopped the defendant's vehicle. (*Id.* at p. 487.) The officers asked the defendant to step out of the car upon noticing that his pupils were dilated and his speech was slurred. One officer then performed a pat search. The trial court found the pat search was not justified, and the appellate court agreed there were no facts to support a finding that the searching officer reasonably thought he was in danger: "We have a daylight encounter, between a young man, possibly under the influence of something, alone and apparently cooperative, with two police officers who were presumably armed." (*Id.* at p. 492.)

A pat search was also not justified where a defendant failed to provide identification, refused to allow a search of his vehicle, was nervous and sweating, and possessed baking powder or soda along with a toothbrush. (*Dickey, supra,* 21 Cal.App.4th at p. 956.) In *Dickey,* the encounter between the defendant and two officers

5

occurred during the daytime.  The officers had seen the defendant's car parked in the middle of a rural road, and they had seen the defendant moving around in his car.  The officers asked the defendant and his passenger to exit the car, obtained consent to search a backpack, then pat searched them after finding baking powder or soda in the backpack.  Although "[t]he deputy testified that he performed the patdown search for 'officer safety,' " there were no specific and articulable facts showing that the defendant might have been armed and dangerous.   (*Ibid.*)

A midnight vehicle stop in a " 'high-gang location' " did not justify the pat search in *People v. Medina* (2003) 110 Cal.App.4th 171 at page 175 (*Medina*).  There, two officers stopped the defendant's vehicle after noticing it had a broken taillight.  Although "there 'wasn't anything specific' " leading the officers to believe the defendant was armed, one performed a pat search.  (*Ibid.*)  The appellate court rejected the People's argument "that the time of day and location may in combination be sufficient by themselves to justify a *Terry* stop and frisk."  (*Id.* at p. 177.)  Thus, the pat search was unlawful. (*Id.* at p. 178.)

Baggy clothing and "the presence of drugs" justified a pat search in *People v. Collier* (2008) 166 Cal.App.4th 1374 at page 1378.  In that case, two officers initiated a daytime traffic stop of a vehicle in which the defendant was a passenger.  (*Id.* at p. 1376.)  The officers smelled marijuana and one officer asked the defendant to step out of the car.  The defendant, who was taller than the officer, "wore baggy shorts that hung down to his ankles and an untucked shirt that extended to his midlegs."  (*Ibid.*)  Based on the baggy clothing, an officer believed the defendant "might be concealing an otherwise bulging item, perhaps a weapon," and therefore conducted a pat search.  (*Ibid.*)  In affirming the denial of the defendant's motion to suppress, the appellate court noted that " 'guns often accompany drugs' " and that the officers were about to search the car.  (*Id.* at p. 1378.)  It was a "common sense" conclusion that the officer had reasonable concerns for his safety

under the circumstances, particularly in light of the defendant's size and his baggy clothing. (*Ibid.*)

In the instant case, the trial court identified the relevant factors as: (1) the time of night—it was about 3:25 a.m.; (2) the fact that the officer was alone; (3) defendant's behavior—his crying and looking around as if deciding whether to flee or fight; (4) and defendant's "baggy clothing where a weapon could easily have been stored." The trial court also explicitly found the officer, who testified that he was concerned for his safety, to be credible.

Under the cases discussed above, the trial court did not err by denying defendant's motion to suppress. Here, a single officer detained defendant very late at night in a high-crime area; these facts help distinguish the instant case from *Adam* and *Dickey*, both of which concerned daytime encounters with more than one officer. Although a late night detention in a high-crime neighborhood does not alone supply reasonable suspicion for a pat search (*Medina, supra,* 110 Cal.App.4th at p. 177), here there were additional relevant facts. Defendant wore "very bulky clothing," and both his jackets and pants had pockets in which a weapon could have been concealed. (See *Collier, supra,* 166 Cal.App.4th at p. 1378.) During the encounter, defendant appeared nervous, and he looked around in different directions as if contemplating escape routes. "Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. [Citation.]" (*In re H.M.* (2008) 167 Cal.App.4th 136, 144.)

Thus, the officer's testimony in this case pointed to a number of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]" the search. (See *Terry, supra,* 392 U.S. at p. 21.) Under the circumstances, the officer reasonably believed his safety was in danger and performed a pat search to make sure he was not dealing with an armed subject during the detention. (*Id.* at p. 27.)

7

### B.    *Probation Condition*

One of defendant's probation conditions provided:  "You shall not possess or consume any alcohol or illegal drugs including marijuana, and even if you have a medical marijuana card – nor shall you knowingly go to places where those items are being offered for sale or being consumed."  When defendant indicated that he did have a medical marijuana card, the trial court noted that defendant was set to appear in front of another judge the following week and that the other judge could modify that aspect of the probation condition.

Defendant contends the above probation condition is unconstitutionally vague because it does not require him to know that he is in possession of alcohol or illegal drugs.  He argues he could "unwittingly violate probation" if, for instance, he held someone's backpack without knowing it contained the prohibited items, or if someone left the prohibited items at his home or in his car, without his knowledge.

The Attorney General acknowledges that in *People v. Rodriguez* (2013) 222 Cal.App.4th 578, this court agreed that a knowledge element should be added to a similar condition.  This court noted that to the extent the probation condition reinforced the defendant's "obligations under California's Uniform Controlled Substances Act, the same knowledge element which has been found to be implicit in those statutes is reasonably implicit in the condition" (*id*. at p. 593), but that because the condition was "not limited to substances regulated by statute, but extend[s] to alcohol," an express knowledge requirement would "eliminate any potential for vagueness or overbreadth in applying the condition" (*id.* at p. 594).  The Attorney General therefore concedes that the condition should be modified in this case.

## IV.    DISPOSITION

The probation condition that provides "You shall not possess or consume any alcohol or illegal drugs including marijuana, and even if you have a medical marijuana

card – nor shall you knowingly go to places where those items are being offered for sale or being consumed" is modified to provide:

"You shall not knowingly possess or consume any alcohol or illegal drugs including marijuana, even if you have a medical marijuana card, nor shall you knowingly go to places where those items are being offered for sale or being consumed."

As modified, the judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:


_____
MÁRQUEZ, J.


_____
GROVER, J.