Filed 8/24/21  In re J.C. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>J.C.,<br><br>        Defendant and Appellant. | F081791<br><br>(Super. Ct. No. JJD071634)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Hill, P.J., Detjen, J. and DeSantos, J.

Minor, J.C., appeals from a disposition order continuing him as a ward of the juvenile court, granting him probation, and committing him to the short term program. On appeal, he argues that the juvenile court erred in denying his motion to suppress because officers detained and searched him without reasonable suspicion of wrongdoing in violation of the Fourth Amendment of the United States Constitution. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On July 9, 2018, the Tulare County District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD071634, alleging minor committed burglary (Penal Code, § 459;[1] count 1) grand theft (§ 487, subd. (a); count 2), and vandalism in excess of $400 (§ 594, subd. (a); count 3). As to count 3, the petition further alleged minor committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)).

On October 30, 2018, minor admitted counts 2 and 3 in exchange for dismissal of count 1 and the gang allegation on count 3.

On December 11, 2018, the juvenile court held a disposition hearing. Minor was adjudged a ward of the juvenile court and placed on probation.

On January 28, 2020, the Tulare County District Attorney filed a second juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD071634 (second petition), alleging minor committed burglary (§ 459; count 1).

On July 21, 2020, minor admitted the truth of the second petition. The juvenile court ordered minor to return for a disposition hearing on August 25, 2020.

On August 4, 2020, the Tulare County District Attorney filed a third juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD071634 (third petition), alleging minor possessed a loaded firearm (§ 25850, subd. (a); count 1).

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

2.

On August 25, 2020, minor filed a motion to suppress evidence (Welf. & Inst. Code, § 700.1).

On September 2, 2020, the Tulare County District Attorney filed an amended third petition, alleging minor illegally possessed a concealed weapon (§ 29610).[2]

On September 8, 2020, the juvenile court held a jurisdictional hearing on the amended third petition and resolved minor's motion to suppress. The court denied minor's motion and found the petition true.

On September 11, 2020, the Tulare County District Attorney filed a fourth juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD071634 (fourth petition), alleging minor committed burglary (§ 459).

On September 15, 2020, minor filed a notice of appeal.[3]

On September 29, 2020, minor admitted the truth of the fourth petition. On the same date, the juvenile court continued minor as a ward of the court, placed him on probation, and committed him to the short term program (180 days).

## FACTUAL SUMMARY[4]

On July 31, 2020, Tulare County Sheriff's Sergeant Hector Rodriguez was the supervisor of the Tulare Area Gang and Narcotics Enforcement Team (TAGNET). He and three or four detectives were on patrol in Orosi "working gang suppression." At around 8:50 p.m., he was near the intersection of Ralph and Miller Avenues when he saw two juveniles walking west along the north sidewalk. Rodriguez described the area as being known for gang activity. He illuminated the juveniles with a spotlight on his vehicle and recognized minor as one of the juveniles based on his prior contacts.

---

[2] The amended petition did not reallege possession of a loaded firearm.

[3] On December 18, 2020, we deemed the prematurely filed notice of appeal "timely filed immediately after the disposition hearing on September 29, 2020."

[4] The factual summary is derived from the joint jurisdictional hearing and motion to suppress hearing held on September 8, 2020.

3.

Specifically, Rodriguez knew minor and the other juvenile from a previous "shots-fired" call. Minor was wearing long shorts and a baggy shirt that covered "past the zipper of his shorts." Rodriguez knew minor was a Sureño gang member and associated with other Sureño gang members.

As Rodriguez drove his vehicle eastbound, he turned into the westbound lane, continuing to illuminate minor and the other juvenile with his spotlight. Rodriguez exited his vehicle approximately 10 feet from minor and the other juvenile. He noticed that minor "had his hands in his [pants] pockets as if he was either retaining a weapon or holding up his shorts …." He directed minor to remove his hands from his pockets and interlace his fingers behind his head. Rodriguez asked minor if he had anything he was not supposed to have. Minor responded that he did. Rodriguez then "conducted a pat search of [minor] because [he] was outnumbered two to one." Rodriguez "immediately went for [minor's] waistband and for [the] pockets of his shorts because that is the area that [is] more commonly where people conceal weapons …." Rodriguez felt something in minor's pocket and saw what he recognized to be the butt of a handgun. He called for backup and Sergeant Sanchez arrived less than a minute later. Sanchez took "a .22 caliber, Smith and Wesson .22S" handgun from minor.

At the time Rodriguez and Sanchez searched minor, Rodriguez did not know whether minor was on probation or subject to search terms.

## DISCUSSION

Minor contends Rodriguez detained and searched him without a reasonable suspicion that he was engaged in criminal activity. The People contend Rodriguez had reasonable suspicion that minor committed a crime because he was in an area known for gang activity, was a known Sureño gang member, and held his hands in his pockets as if he was retaining a weapon or holding up his shorts. Minor contends the information Rodriguez possessed did not provide reasonable suspicion of wrongdoing and amounted to nothing more than a "hunch." We agree with the People. A minor known to be gang

4.

member, wearing baggy clothing, walking with his hands in his pockets in a manner that suggested he might be retaining a weapon, at night, along with another person, in an area known for gang activity provides reasonable suspicion that the person is engaged in criminal activity.

> "In deciding whether relevant evidence must be suppressed, we look exclusively to the requirements of the United States Constitution. [Citation.] In reviewing a ruling on a suppression motion, we 'defer to the trial court's factual findings, express or implied, where supported by substantial evidence.' [Citation.] 'In determining whether, on the facts so found [and/or facts that are undisputed], the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' [Citations.] The prosecution always bears the burden of justifying, by a preponderance of the evidence, that a warrantless search or seizure falls within a recognized exception to the warrant requirement." (*People v. Gutierrez* (2018) 21 Cal.App.5th 1146, 1152.)

"The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees the right to be free of unreasonable searches and seizures." (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 622.) California law applies federal constitutional standards to the review of search and seizure rulings. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156, fn. 8.) Generally, police contact with individuals in public places will fall into one of three categories: (1) a consensual encounter, (2) a detention, and (3) an arrest. (*People v. Bailey* (1985) 176 Cal.App.3d 402, 405.) Detentions are "seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' " (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784; see *Berkemer v. McCarty* (1984) 468 U.S. 420, 439–440 [" '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' "].) We consider the totality of the circumstances in determining whether the particularized and objective facts known to the police provided reasonable cause to detain the defendant. (*People v. Souza* (1994) 9 Cal.4th

224, 237.)  Where an investigative detention is warranted, "police may conduct 'a protective patdown search for weapons.' " (*People v. Huggins*, (2006) 38 Cal.4th 175, 242.)

> " 'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.  [Citation.] The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity.  [Citation.]  [¶] …  An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.  [Citation.]  But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.  Accordingly, … the fact that the stop occurred in a "high crime area" [is] among the relevant contextual considerations….' " (*People v. Huggins*, *supra*, 38 Cal.4th at pp. 241–242; see *People v. King* (1989) 216 Cal.App.3d 1237, 1241 ["[T]he fact that an area involves increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous.  While this factor alone may not justify a weapon search, combined with additional factors it may."].)

In addition to the location of the detention, courts also consider whether the stop took place at night.  (*People v. Souza*, *supra*, 9 Cal.4th at p. 241.)  However, the location of a suspect and time of day are insufficient to give rise to a reasonable suspicion that criminal activity is afoot and the person to be searched is engaged in it; some additional facts related to the person's conduct must be present.  (*People v. Medina* (2003) 110 Cal.App.4th 171, 178.)  That the officers know the persons to be searched are gang members and may have been involved in violent or firearm-related incidents in the past may support conducting a patdown search.  (*In re H.M.* (2008) 167 Cal.App.4th 136, 146–147 [a person's suspicious behavior and previous contacts with law enforcement are factors specific to the person to be searched that may support a reasonable suspicion that the person searched possessed a weapon]; cf. *People v. Hester* (2004) 119 Cal.App.4th

6.

376, 389 [even when law enforcement expects retaliation against rival gang members, individualized suspicion that the specific gang member to be searched has a weapon is required].)  Similarly, while police do not enjoy "carte blanche to pat down anyone wearing baggy clothing," "the wearing of baggy clothing, coupled with other suspicious circumstances," may furnish "the requisite facts to support a patdown for weapons." (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1377–1378 & fn. 1.)  Further, an officer being outnumbered by suspects may support a patdown search for weapons.  (See *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1230.)

In *In re Frank V.* (1991) 233 Cal.App.3d 1232, officers observed two people in a gang neighborhood, "leaving from the curb of a known gang house, one wearing a heavy coat with his hands in his pockets."  (*Id.* at p. 1241.)  An officer ordered the minor wearing the heavy coat to remove his hands from his pockets.  (*Id.* at p. 1237.)  The minor soon after attempted to place his hands back in his pockets.  (*Ibid.*)  An officer then conducted a patdown search and discovered a firearm in a pocket of the jacket.  (*Ibid.*)  The court of appeal found that minor "starting for his pockets again, after being told to take his hands out, provided an 'additional factor' justifying a patdown search for weapons."  (*Id.* at p. 1241; see also *People v. Jordan* (2004) 121 Cal.App.4th 544, 558 ["Where police officers follow up an anonymous tip and observe suspicious behavior, the totality of the circumstances may generate a reasonable suspicion that justifies a *Terry* stop and frisk."].)

Here, when Rodriguez directed minor to remove his hands from his pockets, minor complied.  Minor did not reach for his pockets again.  However, minor was a known Sureño with another gang member or gang associate in an area known for gang activity.  When Rodriguez first approached and illuminated minor with his spotlight, minor had his hands in his pockets "as if he was either retaining a weapon or holding up his shorts …." (§ 29610 ["A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person."].)  Rodriguez was outnumbered by the minor and the other

7.

juvenile and noted minor wore baggy clothing that could conceal a weapon. On this record, deferring to the trial court's factual conclusions, we conclude that the totality of the circumstances gave rise, based on articulable and specific facts, to a reasonable suspicion that minor was armed and engaged in criminal activity.

## **DISPOSITION**

The order is affirmed.