Filed 3/24/22; Certified for Publication 4/13/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JUAN PANTOJA,<br><br>        Defendant and Respondent. | A162591<br><br>(Solano County<br>Super. Ct. No. FCR349721) |

Defendant Juan Pantoja filed a motion to suppress evidence of a firearm found on his person when he was patted down during a traffic stop. The trial court granted defendant's motion and then dismissed the case. The District Attorney appeals.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2020, the Solano County District Attorney filed a one-count felony complaint charging defendant with possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)). The next month, defendant filed a motion to suppress evidence gathered on January 3, 2020 (§ 1538.5), arguing the evidence was obtained as the result of an unreasonably prolonged detention and illegal search.

---

[1] Further undesignated statutory references are to the Penal Code.

1

*Hearing on Defendant's Suppression Motion and Preliminary Examination*

On April 12, 2021, the magistrate heard defendant's suppression motion at the preliminary hearing. The only witness was Vacaville police officer Chris Hill.

Officer Hill testified he was on duty around 1:30 a.m. on January 3, 2020, when he saw a silver Dodge turn right onto Brown Street. The car "caught [his] attention because it was going rather quickly" although it was traveling within the speed limit of 25 miles per hour. Hill turned around to follow the Dodge and noticed the license plate light and third brake light located at the back window of the vehicle appeared not to be working.

As the Dodge pulled into an apartment complex parking lot, Hill turned on his overhead lights and initiated a traffic stop. Defendant was the driver and sole occupant of the car. Hill vaguely recognized him, and when defendant gave his name, Hill testified he remembered defendant "had a history of violence and firearm possession, and he was at the time an investigative lead in a homicide."[2] Hill had prior contact with defendant a handful of times and had "also seen his name in briefing logs." He thought he transported defendant once when defendant was arrested for possession of firearms. Hill did not recall having any contact with defendant when a crime of violence was involved.

When Hill approached the driver's side door, the window was rolled down and defendant asked if the officer wanted his license, registration, and proof of insurance. There was no smell of marijuana and no contraband in plain view. Hill saw no signs that defendant was intoxicated. Hill ran a

---

[2] Initially, the trial court sustained a defense objection to this testimony based on lack of foundation and hearsay. The prosecutor stated the evidence was only for "the effect on the listener" (and so not for the truth), and the court allowed the testimony for that purpose.

record check and learned defendant had a valid license and was not on probation or parole. Hill asked where defendant was coming from (he said he went to get a burrito) and when he got off probation (he answered, 2018). Hill asked if there was weed in the car, and defendant said he did not smoke weed. Hill asked defendant if he could take a look in the vehicle for contraband, and defendant declined.

After defendant declined to consent to a search, Hill asked defendant to get out of his car and put his hands behind his head because Hill was going to issue him a citation for the vehicle lighting infractions. Around this time, another officer arrived on the scene.

The prosecutor asked whether Hill believed "defendant was armed or dangerous at that moment." Hill responded, "He was wearing baggy clothing. He had [a] hoodie on and jeans. The hoodie naturally has bulges in it, so based upon defendant's history of weapons, I elected to remove him from the vehicle and pat him down so I can complete the citation." Asked again if he believed defendant was presently armed and dangerous, Hill answered, "There's a good possibility or chance, yes."

Defendant did not make any furtive gestures and did not make any sudden movements during the traffic stop, but "he appeared to be getting nervous" when Hill told him he was going to pat him down. As Hill patted defendant's front waistband area, he felt what he recognized as a handle to a handgun. He lifted the front of defendant's hoodie and saw a revolver. Defendant was arrested. Hill inspected the revolver, which was loaded with five rounds. The traffic stop occurred in a high-crime area.

On cross-examination, Hill agreed it had been years since he had seen defendant arrested. Defense counsel also established that in his police report of the incident Hill did not mention any bulges in defendant's clothes and

apparently did not describe defendant's sweatshirt as baggy. Hill acknowledged that it was cold outside at the time of the traffic stop, Hill usually takes only about five minutes to write a traffic citation, and in fact there was no arrest warrant for defendant in the homicide case in which he was "an investigative lead."

In support of the motion to suppress, defense counsel argued the prosecution failed to establish "reasonable articulable facts that Mr. Pantoja was armed and presently dangerous at the time," noting there was no evidence of contraband, no furtive or evasive movements, and defendant complied with the traffic stop. He pointed out there was no proof defendant had "any arrests by the Vacaville Police within years of this occurring" and the prosecution cited no authority that "specifically says knowledge of a . . . defendant's history from years prior allows them to pat search at will." Defense counsel further observed that Hill initially left defendant alone inside his car while Hill returned to his patrol car to run the record check, which suggested the officer did not actually believe defendant was armed or presently dangerous at the time of the traffic stop.

The prosecutor argued the totality of the circumstances supported Hill's reasonable belief that defendant was armed or dangerous, citing defendant's baggy clothing, that it was dark outside and in the car, that the stop was in a high-crime area, and that Hill knew of "defendant's history of violence and weapons possession."

*Trial Court Rulings*

The trial court granted defendant's motion to suppress, explaining: "[T]he officer is well within his rights to remove a detainee from a vehicle while the investigation is proceeding, and that includes traffic stops and minor citations; however, in order . . . to conduct a pat search, there must be

4

specific and articulable facts known to that officer that would lead that officer to believe that he was presently armed and dangerous. When you asked this officer that exact question, his answer was, 'There was a good chance,' which to me means that that's all speculative, and he didn't have any specific or articulable facts to believe that this individual was presently armed or dangerous. [¶] Therefore, I'm going to grant the motion to suppress. The motion to suppress being granted, there's insufficient evidence for a holding order and this matter is discharged and his bond is exonerated. And that concludes Mr. Pantoja's matters and that concludes our calendar for today."

## DISCUSSION

*Constitutional Principles*

"In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the United States Supreme Court held that there exists 'a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " (*King v. State of California* (2015) 242 Cal.App.4th 265, 283.)

" 'The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' ([*Terry*, *supra*, 392 U.S.] at p. 29.) The officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a

5

suspicion that the suspect is armed and dangerous." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 955–956 (*Dickey*).) "[A]n 'inchoate and unparticularized suspicion or "hunch" ' is insufficient." (*In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 305 (*Jeremiah S.*).)

In *Dickey*, for example, the Court of Appeal held a pat-down search was not justified based on circumstances that the defendant "(1) had no identification, (2) exercised his Fourth Amendment right and refused to allow the deputy to search the vehicle, (3) was nervous and sweating, (4) or because baking powder was found in a film canister" because "[n]one of these considerations, considered singly or in combination, would lead an officer to ' ". . . reasonably believe in the possibility that a weapon may be used against him. . . ." ' " (*Dickey*, *supra*, 21 Cal.App.4th at p. 956.) In *Jeremiah S.*, the pat search of a minor who was detained with a companion just before midnight on suspicion of robbery was not justified where the two minors were smaller than the officers, the officers had no information that the robbery being investigated involved weapons, the minors followed officer instructions, and they made no furtive, unusual or sudden movements. (*Jeremiah S.*, *supra*, 41 Cal.App.5th at p. 306.) In *In re H.H.* (2009) 174 Cal.App.4th 653, 660 the pat search could not be justified based on the totality of the circumstances where a "minor was stopped for a traffic infraction, not a crime of violence," at 11:30 p.m., because "the time and location of the encounter, though relevant, 'are insufficient by themselves to cast reasonable suspicion on an individual.' " (Accord *People v. Medina* (2003) 110 Cal.App.4th 171, 177–178 (*Medina*) [rejecting the Attorney General's argument that the time of day and location may in combination be sufficient by themselves to justify a *Terry* stop and frisk].)

*Standard of Review*

"In reviewing a trial court's decision to grant a motion to suppress evidence, we rely on the trial court's express and implied factual findings, provided they are supported by substantial evidence, to independently determine whether the search was constitutional. [Citation.] 'Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court.' [Citation.] It is the trial court's role to evaluate witness credibility, resolve conflicts in the testimony, weigh the evidence, and draw factual inferences. [Citation.] We review those factual findings under the deferential substantial evidence standard, considering the evidence in the light most favorable to the trial court's order." (*People v. Lee* (2019) 40 Cal.App.5th 853, 860–861, 870 [affirming the grant of a motion to suppress evidence obtained from an unconstitutional car search].)

*Analysis*

Defendant was stopped for a vehicle code infraction in this case. He was cooperative at all times during the traffic stop, he did not appear to be intoxicated, his driver's license was valid, he answered Officer Hill's questions, he made no furtive or sudden movements, and Hill did not describe any other behavior by defendant that suggested he was armed and dangerous.

When asked whether he believed defendant was armed or dangerous, Hill cited (1) the fact defendant was wearing baggy clothing that "naturally has bulges in it" and (2) "defendant's history of weapons" as reasons to pat him down. Asked again, "did you believe he was presently armed and dangerous?" Hill responded, "There's a good possibility or chance, yes." The trial court found Hill's second response indicated his belief was "all

7

speculative, and he didn't have any specific or articulable facts to believe that this individual was presently armed or dangerous."

Considering the evidence in the light most favorable to the trial court's ruling and deferring to the court's implied factual and credibility findings, we conclude the court properly granted defendant's motion to suppress.

First, the trial court reasonably could have discounted Hill's testimony that defendant's clothing contributed to reasonable suspicion given the facts that Hill did not write in his police report that defendant's clothes were suspiciously bulging or baggy and, at the suppression hearing, he acknowledged the bulges were "natural" and that it was cold outside that night. The District Attorney relies on *People v. Rios* (2011) 193 Cal.App.4th 584, for the proposition that "baggy or bulging clothing" may be relevant to the reasonable suspicion analysis, but the facts of *Rios* are readily distinguishable. In *Rios*, a probation officer "was dealing with a probable gang member who was overly dressed for the weather, belligerently refused to answer his questions or cooperate with him, and continued to make evasive movements even after [the officer] asked him to stop" and the court hearing the suppression motion credited the officer's testimony that, based on all these factors, he believed Rios "was trying to hide a weapon." (*Id*. at p. 599.) Here, in contrast, defendant was dressed appropriately for the weather, he cooperated with Officer Hill during the traffic stop, he made no furtive or sudden movements, and Hill never testified that any of defendant's conduct suggested he was trying to hide a weapon.

Second, we agree with defendant that Hill's description of "defendant's history of weapons" was insufficient to support reasonable suspicion. Hill testified he was aware of defendant having been arrested for possession of

weapons on one occasion,[3] but it had been years since defendant was arrested. Defendant cites federal authority holding that a person's criminal record is not sufficient to create reasonable suspicion to support a detention or search.[4] (See *United States v. Foster* (4th Cir. 2011) 634 F.3d 243, 246–247 (*Foster*) [" 'A prior criminal record "is not, standing alone, sufficient to create reasonable suspicion" ' "]; *United States v. Mathurin* (3d Cir. 2009) 561 F.3d 170, 177 ["a past criminal conviction, never mind an arrest record, is not sufficient alone for reasonable suspicion; law enforcement agents must support this fact with sufficient corroborating evidence"].) For example, in *United States v. Davis* (10th Cir. 1996) 94 F.3d 1465, 1469, the court observed, "Knowledge of a person's prior criminal involvement is not, standing alone, sufficient to create reasonable suspicion." In *Davis*, the court held the circumstances that the defendant was in a high crime area, that he walked away from the police, dropped eye contact, and kept his hands in his pockets and that the officer knew the defendant had a criminal record did not support a reasonable suspicion that the defendant was unlawfully carrying a firearm. (*Id.* at pp. 1469–1470.)[5]

---

[3] Although he initially referred to defendant having "a history of violence and firearm possession," Hill did not provide any information about alleged violence and could not recall any contact with defendant that involved a crime of violence. Hill did not mention violence when explaining why he elected to pat defendant down.

[4] "Questions regarding the suppression of evidence are controlled by federal constitutional law." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 923, fn. 4 [discussing federal case law in review of the denial of a motion to suppress].)

[5] These federal cases consider what circumstances are sufficient to support reasonable suspicion for an officer to detain an individual, but the same reasoning applies to the question of reasonable suspicion to pat down

For the proposition that an officer's history of weapons possession is sufficient by itself to justify a pat search, the District Attorney cites *People v. Bush* (2001) 88 Cal.App.4th 1048. In that case, an officer stopped a vehicle for missing registration stickers on the rear license plate. The officer learned the driver's license was suspended and the car's registration was not current, and the dispatcher further informed the officer the driver " 'had a history of violence, possession of weapons and was reported to be a kick-boxer.' " (*Id*. at p. 1050.) Because the officer was concerned for his safety, after another officer arrived, he had the driver get out of the car and searched the car. (*Ibid*.) On appeal, the driver argued the officer was not entitled to rely on the information from the dispatcher because it was six years old.

The Court of Appeal concluded the search was justified, reasoning: "In our job as appellate court judges, we have been called upon to review hundreds upon hundreds of criminal convictions. Our experience has led us to the conclusion that, unfortunately, felons convicted of illegal weapons offenses often later carry concealed weapons, and they do so more than six years after an initial conviction. Moreover, while some persons who are 'very violent' reform such tendencies, many, many others do not. The information possessed by the dispatcher was not unreasonably stale. That information provided 'specific and articulable facts' which reasonably warranted the officer in believing that defendant was dangerous and could gain immediate control of weapons." (*Bush, supra*, 88 Cal.App.4th at p. 1053.)

*Bush* is distinguishable because Officer Hill in this case did not know from personal knowledge or a dispatch report that defendant was "very

---

an individual. (See *Medina, supra*, 110 Cal.App.4th at p. 177 ["Although the Supreme Court's discussion on this subject addresses the propriety of *Terry* stops, the court's conclusions apply with equal force in determining the reasonableness of *Terry* frisks"].)

violent" (Hill mentioned seeing defendant's name in briefing logs, but he did not testify defendant was reported to be violent), and he knew only that defendant had been *arrested* for possession of a weapon many years ago. "[K]nowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite reasonable suspicion." (*United States v. Sandoval* (10th Cir. 1994) 29 F.3d 537, 542.)[6]

The District Attorney also argues the circumstances that the stop occurred in a high crime area and that defendant was "an investigative lead in a homicide" contributed to a reasonable suspicion defendant was armed and dangerous. But mere presence in a high crime area, by itself, does not justify a pat down search. (*Medina, supra,* 110 Cal.App.4th at p. 177 [weapon search not justified merely because the suspect was in a high gang area late at night].) This principle certainly applies in this case, where it appears defendant was stopped as he pulled into his own apartment complex. And "a person's Fourth Amendment rights cannot be lessened simply because he or she is 'under investigation' by the police. Just as an officer's knowledge of a suspect's past arrests or convictions is inadequate to furnish reasonable suspicion; so too is knowledge that a suspect is merely under investigation, which is an even more tentative, potentially innocuous step towards determining criminal activity." (*Foster, supra*, 634 F.3d at p. 247.)

---

[6] As *Sandoval* explains, if prior criminal history alone sufficed to create reasonable suspicion, "any person with any sort of criminal record—or even worse, a person with arrests but no convictions—could be subjected to a *Terry*-type investigative stop by a law enforcement officer at any time without the need for any other justification at all. Any such rule would clearly run counter to the requirement of a *reasonable* suspicion . . . ." (*Sandoval, supra*, 29 F.3d at p. 543.)

In short, we conclude, viewing the evidence in the light most favorable to the trial court's ruling, Officer Hill's pat search of defendant was not supported by reasonable suspicion.

## DISPOSITION

The orders granting defendant's motion to suppress and dismissing the complaint are affirmed.

_____
Miller, J.

WE CONCUR:


_____
Stewart, Acting P.J.


_____
Mayfield, J.*


A162591, *People v. Pantoja*

_____

     * Judge of the Mendocino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

Filed 4/13/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>JUAN PANTOJA,<br><br>　　　Defendant and Respondent. | A162591<br><br>(Solano County<br>Super. Ct. No. FCR349721) |

BY THE COURT:

　　　The opinion in the above-entitled matter filed on March 24, 2022, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____　　　　_____

　　　　　　　　　　　　　　　　　　　Stewart, Acting P.J.

1

Court: Solano County Superior Court

Trial Judge: Hon. Stephanie Grogan Jones

Krishna A. Abrams, Solano County District Attorney; Karen Jensen, Deputy District Attorney, for Plaintiff and Appellant

Jonathan Soglin, Deborah Rodriguez under appointment by the Court of Appeal, for Defendant and Respondent

A162591, *People v. Pantoja*