Filed 11/29/22 In re Y.P. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Y.P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. Y.P., Defendant and Appellant. | G060919 (Super. Ct. No. 20DL0696) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Katherine E. Lewis, Judge. Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

After the juvenile court denied Y.P.'s motion to suppress evidence found during a patdown search, she admitted possessing controlled substance paraphernalia and destroying evidence, both misdemeanors. She raises two issues on appeal. First, she contends the juvenile court erred by denying her motion to suppress because the warrantless search and seizure violated her Fourth Amendment rights. Second, she asserts the juvenile court abused its discretion by admitting into evidence a 12-second video recording from a body camera worn by one of the officers at the scene, which depicted the situation prior to her patdown search. We conclude the court properly admitted the video and denied the suppression motion.

FACTS

On May 1, 2020, Y.P. possessed a pipe used for smoking narcotics, and when police discovered it in her pocket during a patdown search, she smashed it so it could not be used as evidence. The People filed a petition under Welfare and Institutions Code section 602[1] alleging Y.P. possessed controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a)) and destroyed evidence (Pen. Code, § 135). Y.P. denied the allegations and filed a motion to suppress the pipe and any other evidence discovered during the patdown search (Welf. & Inst. Code, § 700.1). In their opposition to Y.P.'s motion, the People argued the search was lawful on two grounds: (1) officer safety pursuant to *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*); and (2) as a search incident to a lawful arrest.

At the hearing on the suppression motion, the People presented the following evidence. At 9:25 p.m. on May 1, 2020, Santa Ana Police Officer James Babinski responded to a call concerning individuals loitering and drinking alcohol in the alley behind an address on West Myrtle Street. The dispatch call did not mention

_____

[1] Subsequent statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

fighting or weapons. But Babinski knew a homicide had occurred in that alley about two weeks prior, and since then, he had responded to frequent calls concerning activity in the alley. He also knew the alley was associated with a criminal street gang and was in a high crime area. Babinski had responded to multiple calls regarding criminal activity in the alleyway involving firearms, gang activity, stolen vehicles, loitering, public drinking, and disturbing the peace.

When Babinski arrived, he saw Y.P. standing with a group of five or six individuals near a "makeshift memorial" in the alley. She was wearing an oversized shirt and baggy jeans. Babinski did not see any bulges in her clothing. But he believed Y.P.'s baggy, oversized clothing created a safety risk because he could not visually rule out the possibility she had a weapon hidden on her.

Babinski saw open alcoholic beverage containers; one was on the ground next to Y.P. He regarded this as a violation of the law that prohibits possession of an open alcoholic beverage container in public. (Bus. & Prof. Code, § 25620, subd. (a).)[2] Y.P. was standing with her back against the wall and her hands were together in front of her in plain view. Y.P. did not reach for anything and did not make any sudden movements.

Babinski patted down one of the males in the group. Next, he performed a patdown search of Y.P. for officer safety purposes. As he was patting down Y.P., Babinski felt a cylinder glass pipe with a bulbous end, and based on his training and experience, he immediately identified it as a pipe used for smoking narcotics. When he started patting down Y.P., four officers were at the scene. At some point thereafter, two additional officers arrived.

---

[2] Given Y.P.'s age, her possession of alcohol would have also been a violation of Business and Professions Code section 25662, subdivision (a). The record, however, does not indicate Babinski was aware of Y.P.'s minor status when he initially contacted her in the alley.

3

Over defense objections, the court admitted into evidence a 12-second video recording from the body camera worn by one of the officers who arrived first and found Y.P. and the others in the alley. Laying the foundation for the admission of the video, Babinski testified he arrived at the same time as or within a minute of this officer, albeit from a different direction, and the video accurately depicted the scene when he arrived.

The juvenile court denied the suppression motion. Explaining its ruling, the court stated the detention of Y.P. was justified because there "was [an] individualized reasonable suspicion" Y.P. was engaged in unlawful activity, "based on [her] proximity . . . to the open container of alcohol." The court then addressed the patdown search of Y.P., identifying several factors it considered relevant to its determination the officer had a reasonable suspicion Y.P. was armed and a patdown search was necessary for officer safety. The court indicated it considered the evidence the detention occurred in a high crime, volatile area and the nature of the crimes that occurred in the area, many of which involved weapons or dangerous situations. The court also found relevant that the officers were initially outnumbered by the group of individuals hanging out and drinking in the alley. Another relevant circumstance the court considered was Y.P.'s baggy clothing, which could possibly hide a weapon. The court explained it considered all of these circumstances in determining the patdown search of Y.P. was lawful. The court rejected the argument Babinski exceeded the scope of the search, stating it found credible Babinski's testimony that upon feeling an object in Y.P.'s pocket, it was immediately apparent to him it was a narcotics pipe. The court, alternatively, found there was probable cause to arrest Y.P. for possession of an open container of alcohol and the pipe inevitably would have been discovered in a search following arrest.

After the court denied the suppression motion, Y.P. admitted both allegations in the petition pursuant to a disposition agreement. The court declared her a ward of the court (§ 602) and placed her on probation with terms and conditions,

4

including that she serve 20 days in a juvenile institution, complete a drug treatment program, and participate in individual counseling. Y.P. appealed. (§ 800, subd. (a.).)[3]

## DISCUSSION

Y.P. argues the juvenile court erred by denying her suppression motion. She contends the motion should have been granted because the warrantless patdown search and the seizure of the pipe from her pocket violated her Fourth Amendment rights. She also asserts the court abused its discretion by admitting the 12-second video recording from the body camera of a nontestifying officer. We reject both claims and affirm the court's order denying the motion to suppress evidence. Accordingly, we affirm the juvenile court's order sustaining the petition.

### I.

### FOURTH AMENDMENT CLAIM

The Fourth Amendment to the United States Constitution[4] protects people from unreasonable searches and seizures by law enforcement personnel. (*Terry, supra*, 392 U.S. at pp. 8-9.) The basic rule is that a search conducted without a warrant is ""unreasonable under the Fourth Amendment,"" but there are ""a few specifically established and well delineated exceptions"" to this rule. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 372 (*Dickerson*).) "When a defendant challenges the legality of a warrantless search or seizure, the People must establish that the search fell within one of the recognized exceptions to the warrant requirement. [Citations.]" (*People v. Thomas*

---

[3] Y.P.'s counsel filed a premature notice of appeal before Y.P. admitted the allegations and the court announced the disposition. After giving the parties an opportunity to address this issue, we construed the notice of appeal as being filed after the dispositional order.

[4] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

5

(2018) 29 Cal.App.5th 1107, 1114.)  Here, the People argued and the juvenile court found the search of Y.P. was lawful because it fell within either of two exceptions:  (1) a *Terry* stop and frisk for officer safety; or (2) a search incident to arrest.  Y.P. contends neither exception applies and the juvenile court should have granted her suppression motion.  We conclude the court properly denied her motion.  We begin by explaining how we, as a reviewing court, analyze the issue.

"'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.]  We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' [Citation.]" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)  In performing this function, we consider the evidence in the light most favorable to the juvenile court's ruling.  (*People v. Pantoja* (2022) 77 Cal.App.5th 483, 489.)  We do not reevaluate the credibility of witnesses or resolve conflicts in the testimony.  Instead, the juvenile court performs these tasks and weighs the evidence.  (*Ibid.*)

A.  The Patdown Search was Permissible  Under *Terry*

The first issue we consider is whether the search of Y.P. was reasonable under the *Terry* stop and frisk exception to the warrant requirement.  In *Terry*, the United States Supreme Court held that when a police officer has a "reasonable suspicion that a person may be involved in criminal activity," the officer is permitted "to stop the person for a brief time and take additional steps to investigate further. [Citations.]" (*Hiibel v. Sixth Judicial Dist. Court* (2004) 542 U.S. 177, 185.)  This is often referred to as a "*Terry* stop." (*Ibid.*; *In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 304 (*Jeremiah*).)  Y.P. does not challenge the lawfulness of the *Terry* stop and with good reason; the evidence establishes Babinski had a reasonable suspicion Y.P. may have violated the law by possessing an open container of alcohol in public in violation of Business and Professions

6

Code section 25620, subdivision (a). Y.P.'s argument, instead, focuses on the subsequent patdown search. Thus, we turn to the issue of whether Babinski violated Y.P.'s federal constitutional rights when he conducted the *Terry* patdown search, also called a patsearch.

When an officer conducts a *Terry* stop, if the officer has a reasonable suspicion the person stopped "'is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.' [Citation.]" (*Dickerson, supra*, 508 U.S. at p. 373.) "'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . .' [Citation.]" (*Ibid.*) A patdown search "must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' [Citations.]" (*Ibid.*)

Permitting a limited patdown for weapons in *Terry*, the United States Supreme Court was balancing competing interests. The high court recognized an officer has an "immediate interest" in taking steps to ensure the person stopped "is not armed with a weapon that could unexpectedly and fatally be used against" the officer or others nearby. (*Terry, supra*, 392 U.S. at p. 23.) The court observed, on the other hand, a patdown search "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." (*Id.* at p. 17, fn. omitted.) Thus, a patdown search based on the officer's "'standard procedure'" violates the Fourth Amendment. (*People v. Medina* (2003) 110 Cal.App.4th 171, 176.)

"[A] limited frisk for weapons is justified where the officer 'can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous.' [Citations.]" (*In re H.M.* (2008) 167 Cal.App.4th 136, 143.) "'[T]he officer need not be absolutely certain that the individual is armed; the crux of the issue is

7

whether a reasonably prudent person in the totality of the circumstances would be warranted in the belief that his or her safety was in danger.' [Citations.] Reasonable suspicion must be based on 'commonsense judgments and inferences about human behavior.' [Citation.] The determination of reasonableness is 'inherently case-specific.' [Citation.] An inchoate and unparticularized suspicion or hunch is not sufficient, nor is the fact the officer acted in good faith. [Citation.] Where specific and articulable facts are absent, the patsearch cannot be upheld. [Citation.]" (*Id.* at pp. 143-144.)

"Considerations relevant to [the determination of whether an officer had a reasonable suspicion required to conduct a patsearch] typically include visible bulges or baggy clothing that suggest a hidden weapon; sudden movements or attempts to reach for an object that is not immediately visible; evasive and deceptive responses to an officer's questions about what the individual was doing; and unnatural hand postures that suggest an effort to conceal a weapon. [Citation.] Other relevant circumstances can include the type of crime at issue; the detained individual's suspected involvement in such a crime; and the searching officer's experience with such crimes and their associated weapon use in the particular location of the detention. [Citations.] Conversely, an officer's initial suspicions may be dispelled by other facts encountered at the scene. [Citations.]" (*Jeremiah, supra*, 41 Cal.App.5th at p. 305.)

With these principles in mind, we look at the facts presented at the hearing on Y.P.'s suppression motion and analyze whether the patdown search of Y.P was lawful. When Babinski encountered Y.P., she was with a group of six other individuals.[5] He noted some in the group were drinking and there was an open alcoholic beverage container next to Y.P. It was night, around 9:25 p.m. The group was standing in an alley associated with a criminal street gang, in a high crime area. Babinski had previously

---

[5] At the hearing, Babinski testified Y.P. was with a group of five or six individuals in the alley. The video recording admitted at the hearing shows six individuals, in addition to Y.P.

8

responded to calls concerning crime in the alley, ranging from firearm offenses and gang activity to disturbing the peace and public drinking. And there was a recent homicide at this spot in the alley. It would be reasonable for an officer to infer from these facts — a recent homicide in the alley associated with a criminal street gang — that the individuals hanging out in the alley are armed either to protect themselves or for retaliation. When Babinski came upon the group, he and his fellow officers were outnumbered. Although Y.P.'s hands were in plain sight, she was wearing baggy, oversized clothing, which prevented Babinski from visually determining whether she had any weapons on her. Exercising our independent judgment, we conclude the combination of all these facts and the inferences drawn from them could create a reasonable belief in an officer that his safety was in danger, justifying a patdown search.

Like the juvenile court, we see multiple circumstances relevant to our analysis of whether the patdown search was reasonable: time of night; location; the officer's knowledge of criminal activity at this location involving weapons or violence; outnumbered officers; and baggy clothing. Each factor is relevant in assessing whether a patdown search is reasonable under the Fourth Amendment, even though when considered individually or combined with one other factor, it would be insufficient to support a patdown search. (See *Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [person's presence in a high crime area is not sufficient by itself to create a reasonable suspicion the person is armed]; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377, fn. 1 ["the wearing of baggy clothing, coupled with other suspicious circumstances" supports patdown for weapons]; *People v. Medina, supra*, 110 Cal.App.4th at pp. 177-178 [time of night and an area's reputation for criminal activity are pertinent factors but stop and frisk based solely on defendant's presence in high crime area late at night not justified]; *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1230 [concluding patdown justified based on multiple facts, including that officer was alone with two detainees].) We do not look at the factors individually but consider them in their totality. (*United States v. Arvizu*

9

(2002) 534 U.S. 266, 274 [*Terry* precludes a "divide-and-conquer" analysis; factors are considered together, not in isolation from each other]; *People v. Fews* (2018) 27 Cal.App.5th 553, 560-561; *People v. Avila* (1997) 58 Cal.App.4th 1069, 1074 ["factors, although perhaps individually harmless, could reasonably combine to create fear in a detaining officer"].) Here, the combination of all the circumstances supported a reasonable suspicion officer safety was at risk.

Y.P. argues none of the circumstances in her situation justified the patdown search. She focuses on factors that were not present and others that were but should have allayed the officer's safety concerns. She asserts she "did not have a bulge in her clothing, she was cooperative, respectful, she made no furtive movements, her hands were empty and always in plain sight, and the suspected offense – being within one foot of an open beer can – is not an offense that likely involves weapons." While these circumstances are relevant, they do not eliminate a reasonable concern for officer safety created by the other circumstances.

Considering the totality of the circumstances, we conclude the patdown search was justified because the circumstances before Babinski and the reasonable inferences drawn from those facts created a reasonable suspicion Y.P. was armed and dangerous. This conclusion brings us to the issue of whether Babinski exceeded the scope of the patdown search.

B. The Officer Did Not Exceed the Permissible Scope of the *Terry* Search

Y.P. further argues that even if the patdown search was justified, Babinski exceeded the permissible scope of the search by feeling around to determine the object in her pocket was a narcotics pipe. We disagree.

A *Terry* search must be limited in scope to that which is necessary to determine if the person is carrying a weapon or other instrument that can be used to assault the officer. (*Terry, supra*, 392 U.S. at p. 29.) "If the protective search goes

10

beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." (*Dickerson, supra*, 508 U.S. at p. 373.)

Nevertheless, if an officer performing a lawful *Terry* patsearch "feels an object whose contour or mass makes its identity immediately apparent" as contraband and not a weapon, the officer may seize the detected contraband. (*Dickerson, supra*, 508 U.S. at p. 375.) The warrantless seizure of such contraband is permissible because "there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." (*Ibid.*) This has been referred to as the "'plain-feel'" or "'plain-touch'" exception. (*Id.* at p. 371, fn. 1.) However, an officer exceeds the scope of the search authorized by *Terry* if the officer determines the item is contraband "only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket.'" (*Id.* at p. 378.) Thus, once an officer has concluded the person's pocket does not contain a weapon, the officer may not continue to explore what is in the pocket. (*Ibid.*)

In *Dickerson,* the United States Supreme Court established the parameters for when an officer may seize nonthreatening contraband detected through a sense of touch during a protective *Terry* patdown search. (*Dickerson, supra*, 508 U.S. at p. 368.) In *Dickerson*, the officer, during a lawful patdown search, did not find any weapons but felt a small lump in the defendant's jacket pocket. (*Id.* at p. 369.) The officer could not immediately determine if the lump was contraband. (*Id.* at p. 379.) It was "only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'" (*id.* at p. 378) that the officer recognized it to be a lump of crack cocaine in cellophane (*id.* at p. 369). The Supreme Court held the officer's "continued exploration" of the defendant's pocket after the officer determined it did not contain a weapon was an invalid search, unauthorized by *Terry* and the seizure of the cocaine was unconstitutional. (*Dickerson*, at p. 378.)

11

Y.P. asserts Babinski exceeded the permissible scope of the *Terry* patdown search by feeling around to determine the object in her pocket was a pipe, and therefore, her case is like *Dickerson*. We disagree. The facts here are distinguishable from those in *Dickerson*. Babinski testified that during the patdown search of Y.P., he felt an object with a bulbous end, which he immediately identified as a glass pipe for smoking narcotics, based on his training and experience. Unlike the patdown search performed in *Dickerson*, here, Babinski did not squeeze, slide, or otherwise manipulate the contents of Y.P.'s pocket to determine what the object was after he felt it.

Y.P. focuses on Babinski's testimony on cross-examination as support for her contention he exceeded the permissible scope of a *Terry* search. On cross-examination, Babinski was asked if he had "to feel around it at all" to identify "it was a cylindrical shape" and he answered "Yes." Relying on this testimony, Y.P. asserts Babinski "had to manipulate and 'feel around' the object before retrieving it." Y.P. reads more into this testimony than is there. It is reasonable to conclude from all of Babinski's testimony on this issue that there was no time lapse between his realization the object was not a weapon and his realization it was a pipe for smoking a controlled substance. (See *United States v. Yamba* (3d Cir. 2007) 506 F.3d 251, 259 [the proper question "is not the immediacy and certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge, but rather what the officer believes the object is by the time he concludes that it is not a weapon"].) The juvenile court reached such a conclusion, explaining it found credible Babinski's testimony that during the patdown search, he felt an object he immediately recognized to be a narcotics pipe. The evidence supports the court's finding Babinski immediately recognized the pipe when he first felt it and did not manipulate it to determine its character. We are bound by the court's supported factual and credibility findings. (*People v. Pantoja, supra*, 77 Cal.App.5th at p. 489.)

Y.P.'s reliance on *People v. Dickey* (1994) 21 Cal.App.4th 952 is similarly misplaced. In *Dickey*, the Court of Appeal held the patdown search was unlawful because the officer was unable to point to specific and articulable facts supporting a suspicion the suspect was armed and dangerous. (*Id.* at p. 956.) The appellate court then stated that even if the patdown search was justified, it became impermissible in scope when the law enforcement officer manipulated a soft object in the defendant's pocket because its incriminating character was not immediately apparent. The *Dickey* court held the retrieval of the object, which turned out to be two baggies containing marijuana and cocaine, was unlawful. (*Id.* at pp. 955, 957.) Here, unlike in *Dickey* and *Dickerson*, there is no evidence the officer manipulated the object to determine its illegal character.

Examining the record in the light most favorable to the juvenile court's ruling, as we must, we conclude Babinski was acting within the lawful bounds of *Terry* when he searched Y.P. and seized the pipe. Accordingly, there was no violation of Y.P.'s Fourth Amendment rights and the court properly denied the motion to suppress.[6]

## II.

### ADMISSIBILITY OF VIDEO RECORDING

During the hearing, the juvenile court admitted into evidence over defense objections a 12-second video recording from a body camera worn by one of the officers at the scene. The recording showed Y.P. and the others standing in the alley as two officers approached. Babinski testified the video was a fair and accurate depiction of how the scene looked when he arrived. He testified he arrived at or near the same time as the recording officer but from a different direction. Y.P. contends the court abused its

---

[6] Because we affirm the court's ruling on this ground, we do not address the alternative ground the search and seizure were permissible under the exception for a search incident to a lawful arrest.

13

discretion by admitting the video recording because it depicts the scene before Babinski arrived and from a different direction. We conclude the court did not abuse its discretion.

A trial court has broad discretion in determining the admissibility of evidence, including photographs and video recordings. (*People v. Harrison* (2005) 35 Cal.4th 208, 233-234.) A court's decision to admit certain evidence will not be disturbed on appeal "'"except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]'" (*People v. Morales* (2020) 10 Cal.5th 76, 97.)

A video recording must be authenticated before it may be admitted into evidence. (Evid. Code, §§ 250, 1401; *People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) "A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. [Citations.] This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. [Citations.] It may be supplied by other witness testimony, circumstantial evidence, content and location. [Citations.]" (*Goldsmith,* at pp. 267-268.)

Here, Babinski authenticated the video recording as he testified it accurately represented the scene in the alley when he arrived. Y.P.'s assertions Babinski could not authentic the video recording because he arrived from a different direction and after the recording officer are not persuasive. That the direction and timing of Babinski's arrival was not identical to that of the recording officer does not mean Babinski was unable to provide the foundation required to admit the recording. Babinski's testimony provided the necessary foundation, and the court properly admitted the video recording.

14

## DISPOSITION

The juvenile court's order sustaining the petition is affirmed.


MOTOIKE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.